**Jack RINER, Appellant,**

v.

**Robert RAINES, Superintendent, Indiana Reformatory, and Indiana Reformatory, Appellees.**

**No. 1078S218.**

Supreme Court of Indiana.

Sept. 5, 1980.

Harriette Bailey Conn, Public Defender, Robert H. Hendren, Deputy Public Defender, Indianapolis, for appellant.

Theo. L. Sendak, Atty. Gen., David L. Steiner, Deputy Atty. Gen., Indianapolis, for appellee.

DeBRULER, Justice.

Appellant Riner is an inmate of the Indiana Reformatory serving a life sentence for murder imposed by the Morgan Circuit Court. Appellee is the Superintendent of the Indiana Reformatory. Appellant filed a petition for writ of habeas corpus in the Madison Circuit Court in the county in which the reformatory is located contending that prison authorities illegally imposed upon his a disciplinary sanction of six months in an administrative segregation unit for fighting. Appellee responded with a motion to dismiss pursuant to Ind.R.Tr.P. 12(B)(1) contending that the trial court was without jurisdiction to entertain the claim. The motion was overruled and the writ was issued. A hearing was held resulting in a general finding and judgment against appellant. This appeal is from such judgment.

On September 23, 1977, appellant was being housed in the administrative segregation unit for misconduct. An argument had occurred the night before between appellant and another inmate, Mabry, over a domino game. On the morning of September 23, both were released from their cells to go to the hospital. When they met the argument resumed and the two exchanged blows. Two guards in the unit separated them. A written incident report for fighting was filed by the guard under his signature on September 23.

Fighting is a prohibited act under Code Number 103. Appellant received written notice of the charge and a hearing to take place before the Conduct Adjustment Board. Appellant appeared with a law advocate and sought to refute the charge by his own testimony and the testimony of Mabry that Mabry had struck the first blow and that appellant was only defending himself in retaliating. At the conclusion of the hearing appellant was found guilty and was provided with a copy of the Conduct Adjustment Board Disposition Record. Appellant was ordered confined in the administrative segregation unit as a punishment for a period of five months commencing December 18, 1977 and ending May 18, 1978.

Appellant appealed this determination through administrative channels to the Superintendent of the Reformatory who affirmed the decision on October 24, 1977, and thereafter to the Executive Director of the Adult Authority who also affirmed the Board on November 7, 1977.

Appellant then filed his petition in the trial court claiming that the evidence heard by the Board was insufficient to warrant its determination that appellant had violated the disciplinary code. The trial court permitted an extensive evidentiary hearing in which the witnesses gave again the testimony which they had presented to the Board that had formed the basis for the decision. Two months later the trial court made a general finding and judgment against appellant on his petition. The trial court then overruled a motion to correct errors, and in so doing clearly indicated that it had denied the petition upon determining that the evidentiary support for the Board's decision had been sufficient.

At the beginning of this appeal we are faced with the question of whether the trial court was correct in subjecting the Board's decision to the particular form of review described above. Appellant does not cite an Indiana statute or common law rule establishing the right of prison inmates to access to the courts for review of individual disciplinary actions taken against them by prison officials. There is no such statutory right. Furthermore, Indiana cases dealing with prisoner rights have not gone so far. In *Terry v. Byers*, (1903) 161 Ind. 360, 68 N.E. 596, this Court held to the traditional view that the discretion of a prison board under the indeterminate sentence statute to terminate an imprisonment was not subject to the supervision or control of the courts. We have, however, found authority to rule that individual inmates are entitled to a particular good–time earning status. *Dowd v. Johnston*, (1943) 221 Ind. 398, 47 N.E.2d 976; *Dunn v. Jenkins*, (1978) 268 Ind. 478, 377 N.E.2d 868. We have also applied the mandate of the United State Supreme Court in *Morrissey v. Brewer*, (1972) 408 U.S. 471, 92 S.Ct. 2593, 33 L.Ed.2d 484, that parole revocation proceedings be accompanied by due process safeguards. *Hawkins v. Jenkins*, (1978) 268 Ind. 137, 374 N.E.2d 496. However, to date, no Indiana court has reviewed the evidence in support of a finding of guilty by an administrative tribunal of an institutional infraction leading to a loss of good time or the imposition of some form of punishment.

On the other hand, it may now be taken as settled that federal courts have jurisdiction under 42 U.S.C. 1983, to examine conditions at state prisons when allegations of unconstitutional deprivations are made. *Preiser v. Rodriguez*, (1973) 411 U.S. 475, 93 S.Ct. 1827, 36 L.Ed.2d 439; *Baxter v. Palmigiano*, (1976) 425 U.S. 308, 96 S.Ct. 1551, 47 L.Ed.2d 810. Such underlying allegations are based mainly upon the Fourteenth Amendment wherein it is declared that, "nor shall any state deprive any person of life, liberty, or property, without due process of law." Persons convicted of crime and committed to prison have been deprived of their liberty with due process, but are deemed nevertheless to have retained a protected liberty interest. *Wolff v. McDonnell*, (1973) 418 U.S. 539, 94 S.Ct. 2963, 41 L.Ed.2d 935; *Meachum v. Fano*, (1976) 427 U.S. 215, 96 S.Ct. 2532, 49 L.Ed.2d 451. A charge of fighting in violation of prison rules which can lead to disciplinary segregation would trigger due process requirements. *Baxter v. Palmigiano, supra.* Fair written notice of charges and a hearing before an impartial institutional decision maker with a fair opportunity for refutation, confrontation, and lay representation, with a written statement of the conclusion and the evidence relied on made available to the inmate, and administrative review will in general satisfy due process in such cases. *Wolff v. McDonnell, supra; Aikens v. Lash*, 547 F.2d 372 (7th Cir. 1976).

One case relied upon by appellant would require a federal district court to utilize a "substantial evidence" test in determining whether the petitioner had been afforded procedural due process protections in a prison disciplinary proceeding. That case is *Aikens v. Lash*, 514 F.2d 55 (7th Cir. 1975), and in it the Court stated:

"The term 'substantial evidence' need not be something prison officials should be overly concerned about. In each case they should write their conclusions and the reasons for them based on the evidence they have heard. *Wolff, supra*, 418

U.S. at 564, 94 S.Ct. at 2979. It is, of course, hoped that when the evidence is not substantial, they will accordingly find the inmate not guilty of the charges against him. *If however, they do find him guilty, it will then be the responsibility of the reviewing courts in the final analysis to determine whether the decision was based on substantial evidence, or whether the decision was sufficiently arbitrary so as to be a denial of due process.* Clearly, a decision to order a disciplinary transfer cannot be made arbitrarily or capriciously. *United States ex rel. Miller v. Twomey,* 479 F.2d 701, 715 (7th Cir. 1973), cert. denied, 414 U.S. 1146, 94 S.Ct. 900, 39 L.Ed.2d 102 (1974)." (Emphasis added.) 514 F.2d at 60–61.

The judgment in that case was vacated by the United States Supreme Court in *Lash v. Aikens,* (1976) 425 U.S. 947, 96 S.Ct. 1721, 48 L.Ed.2d 191, and subsequently modified on remand in a part not related to the above quotation. *Aikens v. Lash,* 547 F.2d 372 (7th Cir. 1976). This part of the opinion is based upon *Wolff v. McDonnell, supra,* where the United States Supreme Court quoting from *Morrissey v. Brewer, supra,* said:

"We also hold that there must be a 'written statement by the factfinders as to the evidence relied on and reasons' for the disciplinary action." 418 U.S. at 564, 94 S.Ct. at 2979.

*Morrissey* in turn drew heavily upon the Supreme Court opinion in *Goldberg v. Kelly,* (1970) 397 U.S. 254, 90 S.Ct. 1011, 25 L.Ed.2d 287, wherein relative to this point the court stated:

"Finally, the decision maker's conclusion as to a recipient's eligibility must rest solely on the legal rules and evidence adduced at the hearing. *Ohio Bell Tel. Co. v. PUC,* 301 U.S. 292, 57 S.Ct. 724, 81 L.Ed. 1093 (1937); *United States v. Abilene & S.R. Co.,* 265 U.S. 274, 288–289, 44 S.Ct. 565, 569–570, 68 L.Ed. 1016 (1924). To demonstrate compliance with this elementary requirement, the decision maker should state the reasons for his determination and indicate the evidence relied on, cf. *Wichita R. & Light Co. v. PUC,*

260 U.S. 48, 57–59, 43 S.Ct. 51, 54–55, 67 L.Ed. 124 (1922), though this statement need not amount to a full opinion or even formal findings of fact and conclusions of law. And, of course, an impartial decision maker is essential." 397 U.S. at 271, 90 S.Ct. at 1022.

We think it is evident that a written statement by the decision maker satisfying these minimum constitutional criteria would be clearly insufficient for use by a reviewing court in determining whether the decision was based upon substantial evidence. The findings are informally stated and need not include a summary of the evidence. No opportunity would be provided by such a document to determine whether such informally stated findings were themselves supported by substantial evidence in the record taken as a whole. Thus, even in federal court, where jurisdiction to insure procedural due process safeguards has been widely exercised, it is highly questionable whether the substantial evidence test would be essential to according protection against arbitrary action by the institutional decision maker. It is much more likely that the full extent of such protection has been provided where the several steps set forth in *Wolff v. McDonnell, supra,* have been followed, culminating in the simple written statement required in *Goldberg v. Kelly, supra.*

After study of the federal cases involving prison disciplinary actions, the question remains largely unanswered: Does due process of law require state courts to review the evidence presented to institutional decision makers for the purpose of determining whether it supports the decision reached? To be sure, procedural due process must be accorded whenever the individual is subject to "grievous loss" at the hands of the state or its instrumentalities. *Goldberg v. Kelly, supra.* Yet the right to appeal in criminal cases is not a necessary element of due process although to the extent that a state provides such a right, the equal protection clause would require all affected to be treated alike. *Douglas v. California,* (1963) 372 U.S. 353, 83 S.Ct. 814, 9 L.Ed.2d 811. In *Reetz v. Michigan,* (1903)

188 U.S. 505, 23 S.Ct. 390, 47 L.Ed. 563, it was held that an administrative agency or board could, consistent with due process, make final determinations of legal questions, i. e., decisions which are subject to no judicial review or oversight. In so concluding the court said, "Due process is not necessarily judicial process." In this same vein is *Dreyer v. Illinois*, (1902) 187 U.S. 71, 23 S.Ct. 28, 47 L.Ed. 79, in which it was held that the principle of separation of powers is not enforceable against the states as a matter of federal constitutional law, and therefore a statute was not invalid because it granted final and unreviewable adjudicatory authority to a board of penitentiary commissioners to grant paroles.

█ Corrections authorities are subject to federal civil actions pursuant to 42 U.S.C. 1983 should they violate inmate rights, and without prior exhaustion by the inmate of state remedies. *Wilwording v. Swenson*, (1971) 404 U.S. 249, 92 S.Ct. 407, 30 L.Ed.2d 418; *Haines v. Kerner*, (1972) 404 U.S. 519, 92 S.Ct. 594, 30 L.Ed.2d 652; *Preiser v. Rodriguez, supra*. As a practical matter, that inevitable exposure places a strong and effective pressure upon prison authorities to follow due process requirements. The availability in the existing Indiana scheme of one or more levels of administrative review by policy makers and high executive officers within the corrections department is likewise an assurance that fair procedures will be followed at the hearing level and fair decisions rendered. Furthermore, most penalties for institutional infractions will have been suffered by the time a trial court can act and certainly by the time an appellate court can act.

█ Based upon the foregoing considerations we conclude that there is presently no constitutionally protected right to judicial review of the decisions of fact–finding and appellate tribunals presently conducting disciplinary proceedings within the prison system. The judgment of the trial court, being upon the merits of appellant's claim, is therefore reversed with instructions to dismiss the claim. In light of our decision, we find it unnecessary to address appellant's contention that the trial court erred in failing to make supporting special findings of fact.

GIVAN C. J., and HUNTER, PRENTICE and PIVARNIK, JJ., concur.