APPELLANT PRO SE
Dean E. Blanck

ATTORNEYS FOR APPELLEE
Steve Carter
Attorney General of Indiana

Joby Jerrells
Deputy Attorney General

In the

# Indiana Supreme Court

No. 52S02-0409-CV-405

DEAN E. BLANCK,

*Appellant (Plaintiff below)*,

v.

IND. DEP'T OF CORR.,

*Appellee (Defendant below)*.

Appeal from the Circuit Court of Miami County, No. 52C01-0308-CT-397
The Honorable Rosemary Higgins Burke, Judge

On Petition to Transfer from the Indiana Court of Appeals, No. 52A02-0309-CV-800

**June 22, 2005**

**Sullivan, Justice.**

Dean E. Blanck, an inmate whose complaints against Indiana's prison system are a regular topic of our federal cousins' prose,[1] was disciplined for misconduct in prison and appealed to

---

[1] See Blanck v. Vannatta, 115 Fed. Appx. 884 (7th Cir. 2004); Blanck v. Cohn, 65 Fed. Appx. 74 (7th Cir. 2003); Blanck v. Anderson, 22 Fed. Appx. 641 (7th Cir. 2001); Blanck v. Anderson, 14 Fed. Appx. 688 (7th Cir. 2001); Blanck v. Hobson, 2000 U.S. App. LEXIS 11093 (7th Cir. 2000).

one of our state courts. Following long-standing precedent precluding judicial review of prison disciplinary decisions, the trial court dismissed his complaint. The Court of Appeals reversed, finding that several provisions of the Indiana Constitution and Indiana Code entitled Blanck to judicial review of his discipline. We hold that the complaint should have been dismissed for lack of subject matter jurisdiction; none of the provisions relied upon by the Court of Appeals confer subject matter jurisdiction over claims challenging judicial review of prison disciplinary decisions.

### Background

The papers submitted to us in this case suggest the following. While incarcerated at Miami Correctional Facility, a state prison, Dean Blanck was convicted pursuant to prison disciplinary procedures of violating prison rules. As punishment for his misconduct, Blanck was removed from the general prison population and placed into a segregation unit. The Department of Correction ("DOC") did not conduct periodic reviews of his segregation. Blanck challenged his discipline, alleging that certain statutory rights to periodic review of his segregation placement had been violated and that he was entitled to judicial review under the Open Courts Clause of Article I, Section 12, of the Indiana Constitution.

The trial court concluded that Blanck was "inviting judicial review of prison disciplinary actions, prohibited by Hasty v. Broglin, 531 N.E.2d 200 (Ind. 1988)," and sua sponte dismissed Blanck's complaint for failure to state a claim upon which relief could be granted under Indiana Trial Rule 12(b)(6). Miami Circuit Court Order, No. 52C01-03-08-CT-397 (Aug. 11, 2003). The Court of Appeals reversed the trial court's ruling. Blanck v. Ind. Dep't of Corr., 806 N.E.2d 788, 789 (Ind. Ct. App. 2004). We granted transfer, 822 N.E.2d 975 (Ind. 2004), and now affirm the trial court.

2

## Discussion

## I

For a quarter-century, our Court has held that DOC inmates have no common law, statutory, or federal constitutional right to review in state court DOC disciplinary decisions. This was the holding of Justice DeBruler's opinion for a unanimous court in <u>Riner v. Raines</u>, 274 Ind. 113, 409 N.E.2d 575 (1980). We reaffirmed the holding of <u>Riner</u> in Justice Prentice's opinion in <u>Adams v. Duckworth</u>, 274 Ind. 503, 412 N.E.2d 789 (1980); in Chief Justice Shepard's opinion in <u>Hasty</u> in 1988; and, most recently, in Justice Dickson's opinion in <u>Zimmerman v. State</u>, 750 N.E.2d 337 (Ind. 2001).

In a separate opinion in <u>Zimmerman</u>, Justice Boehm wrote that in his view, a future state court challenge by an inmate to prison discipline might not be subject to dismissal despite the <u>Riner</u>-<u>Adams</u>-<u>Hasty</u>-<u>Zimmerman</u> line of cases because those cases left "open" the following questions:

> [D]oes Indiana Code Section 11-11-5-4, which prohibits the Department of Corrections from imposing certain disciplinary actions, create a statutory right? If so, does Article I, Section 12 of the Indiana Constitution guarantee inmates a right to judicial review of disciplinary proceedings allegedly in violation of that statute?

<u>Zimmerman</u>, 750 N.E.2d at 338-39 (Boehm, J., concurring in result). Blanck presented Justice Boehm's questions to the Court of Appeals and our colleagues there answered them in the affirmative. The Court of Appeals held that Blanck had properly raised these two "issues of first impression" and that the trial court had been wrong to dismiss his complaint. "[H]e is entitled," the Court of Appeals said, "to his day in court to have those issues decided on the merits." <u>Blanck</u>, 806 N.E.2d at 791.

## II

Indiana Trial Rule 12(B)(6) subjects to dismissal complaints that "fail[ ] to state a claim upon which relief can be granted." As noted above, it was on this basis that the trial court dismissed Blanck's complaint. As our opinions in <u>Riner</u>, <u>Hasty</u>, and <u>Zimmerman</u> make clear, however, the threshold inquiry in these prison discipline cases is whether the trial court has jurisdiction over the subject matter. If subject matter jurisdiction is lacking, a complaint is subject to dismissal under Trial Rule 12(B)(1). Resolution of the subject matter jurisdiction issue involves determining whether the claim advanced falls within the general scope of authority conferred upon the court by constitution or statute. <u>State ex rel. Camden v. Gibson Circuit Court</u>, 640 N.E.2d 696, 697 (Ind. 1994); <u>Williams v. Williams</u>, 555 N.E.2d 142, 144-45 (Ind. 1990); <u>State ex rel. Young v. Noble Circuit Court</u>, 263 Ind. 353, 356, 332 N.E.2d 99, 101 (1975). We are constrained to observe that neither Blanck nor the Court of Appeals gives any explanation as to how the provisions of the Indiana Constitution and Indiana Code on which they rely create subject matter jurisdiction over claims seeking judicial review of DOC discipline decisions.

## III

In this case, the Court of Appeals held that the trial court had been wrong to dismiss Blanck's complaint because he was entitled to a ruling on the merits of his claim that:

> he has a state created statutory right by the provisions of Ind. Codes § 11-11-5-4, § 11-11-5-5, § 11-11-5-6, § 11-11-5-7 and § 11-10-1-7 protected by the State Constitution, and that Article [I], Section 12 of the Indiana Constitution "Open Courts Clause" is a guaranteed right to judicial review of state laws where prison officials have imposed arbitrary forms of disciplinary punishments in direct violation of these statutes [i.e.] I.C. 11-11-5-4.

<u>Blanck</u>, 806 N.E.2d at 791 (quotations omitted).

## A

Blanck contends that five provisions of the Indiana Code provide him with a right to judicial review of determinations made by the DOC:

> Indiana Code Section 11-10-1-7, which requires periodic review of the reasons for segregation of an offender where the DOC has found that "segregation is necessary for the offender's own physical safety or the physical safety of others."[2]  Ind. Code § 11-10-1-7(a) (2004).

> Indiana Code Section 11-11-5-4, which prohibits the DOC from using various forms of discipline, e.g., corporal punishment; a substantial change in heating, lighting, or ventilation; restrictions on medical and dental care.

> Indiana Code Section 11-11-5-5, which prohibits the DOC from imposing any discipline before affording the person charged with misconduct a hearing to determine his or her guilt or innocence and, if guilty, the appropriate action.  This section also sets forth a detailed set of procedural requirements for such hearings.

> Indiana Code Section 11-11-5-6, which requires periodic review of the reasons for segregation of an offender charged (but not yet found guilty of) misconduct.

> Indiana Code Section 11-11-5-7, which requires periodic review of the reasons for segregation of an offender found guilty of misconduct.

While each of these statutes imposes certain duties on the DOC and, we assume, confers substantive rights on inmates, none of them contains any provision suggesting that inmates have a right to enforce any such rights in court.  So if there is subject matter jurisdiction over claims to enforce any such rights, it must either be because the Legislature intended it to be inferred from these statutes or because it is provided elsewhere in law.

---

[2] Indiana Code Section 11-10-1-7, by its terms, does not apply to cases of segregation imposed on inmates charged with or found guilty of misconduct.  Blanck's complaint indicates that he seeks judicial review of "disciplinary punishments."  Thus it appears that Section 11-10-1-7 is not relevant to his situation.

5

Sometimes the Legislature will be quite explicit in providing that persons with appropriate standing are entitled to go to court and ask for enforcement of a statute's provisions. These provisions are often referred to as "private rights of action" or "private causes of action." (We recently identified some statutes that provide for private rights of action in State Bd. of Tax Comm'rs v. Town of St. John, 751 N.E.2d 657, 661 (Ind. 2001) (listing statutes that provide a private right of action for recovery of attorney's fees).) And where a legislative body does not explicitly provide a private right of action to enforce the provisions of a particular statute, courts are frequently asked to find that the Legislature intended that a private right of action be implied. (One notable example is litigation in which courts have been asked to find an implied private right of action against those who aid or abet violations of federal securities statutes. See Central Bank, N.A. v. First Interstate Bank, N.A., 511 U.S. 164, 169 (U.S. 1994) (noting that "the first and leading case to impose the liability was Brennan v. Midwestern United Life Ins. Co., 259 F. Supp. 673 (N.D. Ind. 1966)" (Eschbach, J.)).

Courts have developed certain rules for attempting to divine legislative intent in these circumstances. A broad formulation of these rules is that a private cause of action generally will be inferred where a statute imposes a duty for a particular individual's benefit but will not be where the Legislature imposes a duty for the public's benefit. Americanos v. State, 728 N.E.2d 895 (Ind. Ct. App. 2000), transfer denied, 741 N.E.2d 1254. But this formulation barely crosses the starting line before a series of interpretative questions arise. How do we know when a duty is imposed for a particular individual's benefit? For the public's benefit? What happens when it seems as if the duty is imposed for both?

We are able to sidestep these types of questions here. While an argument can be made that the duties imposed on the DOC in these prison discipline statutes are for the public's benefit, the stronger argument seems to us to be that these duties are imposed for the benefit of the inmates, and, in any event, we assume they are. But even if that be so, the question here is ultimately one of legislative intent, and we find that the Legislature does not intend that inmates have a private right of action to enforce these statutes.

The Indiana Administrative Orders and Procedures Act, Indiana Code Sections 4-21.5-1-1 through 4-21.5-7-9 ("AOPA"), governs the orders and procedures of state administrative agencies, including the DOC. Chapter 5 of the AOPA "establishes the exclusive means for judicial review of an agency action," Ind. Code § 4-21.5-5-1 (2004), including agency action highly analogous to the disciplinary action challenged in this case.[3] But as the State points out, the Legislature has specifically excluded from the AOPA's application any "agency action related to an offender within the jurisdiction of the department of correction." I.C. § 4-21.5-2-5(6). We conclude that the clear intent of the Legislature here is to deny to inmates charged with or found guilty of misconduct the procedure specified in the AOPA, including judicial review. And with the intent of the Legislature on this point being clear, we are not free to infer a private right of action.

We further conclude that whatever doubt the statutes may leave as to whether inmate discipline decisions are subject to judicial review is resolved in the negative because of the long period of legislative acquiescence to our decisions to that effect. As noted above, these decisions date back to Riner and Adams in 1980. The topic has also been addressed with great frequency by our federal court colleagues—a LEXIS search indicates that well over 100 such cases have been reported. "[T]he failure of the Legislature to change a statute after a line of decisions of a court of last resort giving the statute a certain construction, amounts to an acquiescence by the Legislature in the construction given by the court, and that such construction should not then be disregarded or lightly treated." Miller v. Mayberry, 506 N.E.2d 7, 11 (Ind. 1987) (citing cases).

We hold that none of the prison discipline statutes cited confer subject matter jurisdiction over claims challenging judicial review of prison disciplinary decisions.

---

[3] See, e.g., Ind. Code § 4-2-6-4(b)(2)(D) (judicial review of proceedings for violations of the state ethics code); Regester v. Ind. State Bd. of Nursing, 703 N.E.2d 147, 148 (Ind. 1998) (judicial review of the discipline of a nurse for writing prescriptions without a license); Pendleton v. McCarty, 747 N.E.2d 56, 60 (Ind. Ct. App. 2001) (judicial review of the discipline of insurance agents for dishonest practices), transfer denied, 761 N.E.2d 425; Taylor v. Ind. Family & Soc. Servs. Admin., 699 N.E.2d 1186, 1188 (Ind. Ct. App. 1998) (judicial review of the revocation of a foster home license for foster parent misconduct); Common Cause v. State, 691 N.E.2d 1358, 1362 (Ind. Ct. App. 1998) (judicial review of civil sanctions imposed for violations of a lobbyist registration law); Evansville State Hosp. v. Perry, 549 N.E.2d 44, 45 (Ind. Ct. App. 1989) (judicial review of the dismissal of a state employee for misconduct).

The effective appellate advocate identifies for the court authority contrary to the advocate's position and we express our appreciation to the Attorney General for doing so here. In Ratliff v. Cohn, 693 N.E.2d 530, 548 (Ind. 1998), this Court rejected the DOC's argument that Indiana Code Section 4-21.5-2-5(6) barred an inmate's claim. Neither Blanck nor the Court of Appeals invokes Ratliff. In any event, we agree with the State that Ratliff's claim was of a fundamentally different character than Blanck's. Far from being related to prison discipline or misconduct, Ratliff was a juvenile who sought declaratory and injunctive relief contending that her incarceration with adult offenders violated the Indiana Constitution. Ratliff's holding does not extend to prison discipline or misconduct cases.

**B**

Blanck also contends, and the Court of Appeals held, that the Open Courts Clause of Article I, Section 12,[4] of the Indiana Constitution "guarantees" him judicial review of the DOC's disciplinary decisions.

While the question of whether relief is available under the Open Courts Clause in specific situations divides the members of this Court from time to time,[5] we find no support for the concept that the Open Courts Clause, standing alone, confers subject matter jurisdiction over claims to judicial review of DOC disciplinary decisions. Nor do we find support for a more limited contention to the effect that the Open Courts Clause entitles Blanck to judicial review to enforce the rights arguably provided by the prison discipline statutes. Intuition from the preceding section of this opinion suggests the opposite. If the Open Courts Clause, either standing alone or as kind of a jurisdiction-conferring mechanism for statutory rights, entitles Blanck to judicial review, then it would also entitle any person with appropriate standing to judicial review to enforce the rights provided by any statute. But if that be so, it would never be necessary to analyze whether the

---

[4] The first clause of Article I, Section 12, which we refer to as the Open Courts Clause for purposes of this opinion, provides: "All courts shall be open." It goes on to provide: "[A]nd every person, for injury done to him in his person, property, or reputation, shall have remedy by due course of law. Justice shall be administered freely, and without purchase, completely, and without denial; speedily, and without delay." Ind. Const. art. I, § 12.

[5] See, e.g., McIntosh v. Melroe Co., 729 N.E.2d 972 (Ind. 2000); Martin v. Richey, 711 N.E.2d 1273 (Ind. 1999).

Legislature intended that a private right of action be inferred from a statute; the Open Courts Clause would provide it.

We observed in <u>Martin v. Richey</u> that we have never held that the Open Courts Clause provides a substantive "right" of access to the courts or to bring a particular cause of action to remedy an asserted wrong. 711 N.E.2d 1273, 1283 (Ind. 1999) (citing <u>Rohrabaugh v. Wagoner</u>, 274 Ind. 661, 664, 413 N.E.2d 871, 893 (1980)). (We have also held that the Open Courts Clause does not prevent the Legislature from creating, modifying, or abolishing causes of action. <u>Cheatham v. Pohle</u>, 789 N.E.2d 467, 471 (Ind. 2003); <u>Martin</u>, 711 N.E.2d at 1283.) The Open Courts Clause requires that where a cause of action has been created (by constitution, statute, or common law), courts must be open to provide remedy by due course of law. <u>McIntosh v. Melroe Co.</u>, 729 N.E.2d 972, 979 (Ind. 2000) (plurality opinion). The Open Courts Clause itself, however, does not confer subject matter jurisdiction, at least not over claims challenging judicial review of prison disciplinary decisions.

## Conclusion

Having previously granted transfer, we now affirm the trial court's dismissal of Blanck's complaint; for the reasons discussed above, it should have done so for lack of subject matter jurisdiction under Trial Rule 12(b)(1), rather than for failure to state a claim upon which relief can be granted under Trial Rule 12(b)(6).

Shepard, C.J., and Dickson, J., concur. Boehm, J., concurs in result with separate opinion, which Rucker, J., joins.

9

**Boehm, J., concurring in result.**

For the reasons given by the majority, I agree that the legislature intended to create no private cause of action under the statutory provisions Blanck cites. Because of that conclusion, I do not believe this case presents any issue of subject matter jurisdiction or any issue under the Open Courts provision of the Indiana Constitution. Rather, the complaint should be dismissed because it fails to state a claim. In my view, if there were a private cause of action under these statutes, it could presumably be presented in a court of general jurisdiction.

Rucker, J., joins.