Kevin S. VARNER, Appellant–
Petitioner,

v.

**INDIANA PAROLE BOARD,**
Appellee–Respondent.

No. 45A04–0812–CR–693.

Court of Appeals of Indiana.

May 4, 2009.

Rehearing Denied June 11, 2009.

Kevin S. Varner, Indianapolis, IN, Appellant Pro Se.

Gregory F. Zoeller, Attorney General of Indiana, Elizabeth Rogers, Deputy Attorney General, Indianapolis, IN, Attorneys for Appellee.

## OPINION

ROBB, Judge.

### Case Summary and Issues

Kevin Varner, an inmate at Plainfield Correctional Facility, filed a pro se action for mandate requiring the Indiana Parole Board (the "Board") to determine his parole eligibility based on a vote of all five Board members. The trial court summarily dismissed that action, either for lack of subject matter jurisdiction or pursuant to Indiana Code section 34–58–1–2(a), a statute requiring trial courts to prescreen the legal sufficiency of claims filed by pro se prisoners such as Varner. On appeal, Varner contends the trial court's summary dismissal was improper because the relief he seeks—a five-member vote to determine his parole eligibility—is mandated by Indiana Code section 11–13–3–3(b).

For reasons stated below, we conclude the trial court's summary dismissal was improper because it did not lack subject matter jurisdiction and because Varner's mandate action states a claim upon which relief can be granted. We also elect to address Varner's mandate action on its merit s, concluding that because Indiana Code section 11–13–3–3(b) requires a five-member vote to determine his parole eligibility, he is entitled to the relief he seeks. Accordingly, we reverse the trial court and instruct it to enter judgment in favor of Varner and to grant him the relief he seeks.

### Facts and Procedural History

On October 9, 2008, four of the Board's five members conducted a hearing to determine whether Varner should be paroled. Following the hearing, two members voted for parole and two members voted against. The tie did not go to Varner, however, because the Board's rules preclude it from granting parole unless at least three members vote to do so. *See* 220 Ind. Admin. Code 1.1–2–2(a)(4). Accordingly, the Board denied Varner parole.

Unsatisfied with this result, Varner asked the Board to rehear the matter so the absent member, Randall Gentry, could cast his vote. The Board did not respond, so Varner filed a mandate action in Lake Superior Court on October 30, 2008, alleging the Board had failed to discharge its statutory obligation under Indiana Code section 11–13–3–3(b) to determine his parole eligibility based on a five-member Board vote. For relief, Varner requested that the trial court "issue a mandate requiring the Indiana Parole Board to render its final decision determining whether Varner should be granted or denied parole after the final member, Mr. Randall P. Gentry, casts his vote based upon the record of the proceedings and the hearing conductor's findings." Appellant's Appendix at 4. On the same day, the trial court entered an order summarily dismissing Varner's mandate action on the ground that it "has no jurisdiction over the Indiana Parole Board." *Id.* at 7. Varner now appeals.

### Discussion and Decision

We note at the outset some confusion over the proper standard of review to apply. On the one hand, the trial court's summary dismissal of Varner's mandate action on the same day it was filed suggests the trial court was performing the screening function required for pro se prisoner litigation. *See* Ind.Code §§ 35–58–1–1 and –2. On the other hand, the trial court's stated reason for dismissing the action, lack of jurisdiction, is not an enumerated ground for dismissal under the screening statutes, *see id,* which suggests

the trial court set out to review Varner's mandate action as required by the screening statutes, but ultimately decided to dismiss for lack of subject matter jurisdiction.[1] Given this confusion, and for the sake of completeness, we will review the trial court's summary dismissal of Varner's mandate action under both standards. *Cf. Burke v. Town of Schererville*, 739 N.E.2d 1086, 1090 (Ind.Ct.App.2000) (addressing propriety of trial court's dismissal where party moved for dismissal pursuant to Trial Rule 12(B)(1) and (6), but trial court did not specify on which ground it based the dismissal), *trans. denied*.

I. Lack of Subject Matter Jurisdiction

■■■ "[S]ubject matter jurisdiction entails a determination of whether a court has jurisdiction over the general class of actions to which a particular case belongs." *Samuels v. State*, 849 N.E.2d 689, 690 (Ind.Ct.App.2006), *trans. denied*. In making this determination, "[t]he only relevant inquiry ... is to ask whether the kind of claim which the plaintiff advances falls within the general scope of authority conferred upon such court by the constitution or by statute." *State v. Schuetter*, 503 N.E.2d 418, 420 (Ind.Ct.App.1987). We review de novo the trial court's determination of whether it lacked subject matter jurisdiction. *See Truax v. State*, 856 N.E.2d 116, 121 (Ind.Ct.App.2006).

The parties focus their arguments on whether Indiana Code section 11–13–3–3(b) grants Varner the right to have his parole eligibility determined by a full, five-member Board vote. That provision states in relevant part that a parole eligibility hearing

shall be conducted by one (1) or more of the parole board members. If one (1) or more of the members conduct the hearing on behalf of the parole board, the final decision shall be rendered by the full parole board based upon the record of the proceeding and the hearing conductor's findings.

Ind.Code § 11–13–3–3(b). Varner argues that "final decision" means the decision to grant or deny parole and that "full parole board" means all five members. The State counters that because the Board's rules define a full board as consisting of at least three members, *see* 220 Ind. Admin. Code 1.1–2–2(a)(3) and (4), the four-member vote was a proper discharge of its obligation under Indiana Code section 11–13–3–3(b).

However, rather than plunge into the merits of what Indiana Code section 11–13–3–3(b) requires, the fundamental question for purposes of resolving the issue of subject matter jurisdiction is whether Varner's mandate action falls within the general scope of authority conferred upon the trial court by the constitution or by statute. *See Schuetter*, 503 N.E.2d at 420. Resolution of that question requires us to address the Indiana Administrative Orders and Procedures Act ("AOPA"), Indiana Code sections 4–21.5–1–1 to 4–21.5–7–9, as well as some general principles regarding mandate actions.

Chapter five of the AOPA "establishes the exclusive means for judicial review of an agency action," Ind.Code § 4–21.5–5–1, and Indiana Code section 4–21.5–2–5(6) ("Section 5(6)")—the operative provision for purposes of our discussion here—precludes judicial review of "[a]n agency ac-

---

**1.** We note here as an aside that in dismissing for lack of jurisdiction, the trial court did not specify whether it meant lack of subject matter jurisdiction or lack of personal jurisdiction. It is apparent, however, that the trial court meant the former because subject mat-

ter jurisdiction may be raised sua sponte at any time by the trial court, *Warrick County v. Weber*, 714 N.E.2d 685, 687 (Ind.Ct.App. 1999), whereas personal jurisdiction may not, *see Adams v. Budgetel Inns. Inc.* 550 N.E.2d 346, 347–48 (Ind.Ct.App.1990), *trans. denied*.

tion related to an offender within the jurisdiction of the department of correction." The AOPA defines "agency" as "any officer, board, commission, department division, bureau, or committee of state government that is responsible for any stage of a proceeding under this article," Ind.Code § 4–21.5–1–3, and "agency action" to include "[a]n agency's performance of, or failure to perform, any other duty, function, or activity under this article," Ind. Code § 4–21.5–1–4(3).

Indiana Code section 34–27–3–1 states that "[a]n action for mandate may be prosecuted against any inferior tribunal, corporation, public or corporate officer, or person to compel the performance of any ... act that the law specifically requires ... or ... duty resulting from any office, trust, or station." Such an action exists only where no adequate remedy at law is available. *See Whitney v. Bd. of Sch. Trs. of Dekalb County,* 416 N.E.2d 1289, 1292 (Ind.Ct.App.1981). Moreover, even if there is no adequate remedy at law, this court has stated consistently that an action for mandate is a disfavored, extraordinary remedy that will only lie if the relator has a clear and unquestioned right to relief, as well as an absolute duty on the part of the respondent to perform the act demanded. *Robert Lynn Co., Inc. v. Town of Clarksville Bd. of Zoning Appeals,* 867 N.E.2d 660, 673 (Ind.Ct.App.2007), *trans. denied; Murray v. Hamilton County Sheriff's Dep't,* 690 N.E.2d 335, 338 (Ind.Ct.App. 1997).

As the State points out, because Section 5(6) precludes judicial review of "[a]n agency action related to an offender within the jurisdiction of the department of correction," it "appears that Varner had no adequate remedy at law." Appellee's Brief at 4. Given that a mandate action is designed to provide a remedy in such an instance, *see Whitney,* 416 N.E.2d at 1292, we think this is precisely the type of claim that "falls within the general scope of authority conferred upon such court by the constitution or by statute," *Schuetter,* 503 N.E.2d at 420. Indeed, such a conclusion is consistent with this court's opinion in *State ex rel. J.A.W. v. Indiana Juvenile Parole Committee,* 581 N.E.2d 989 (Ind.Ct. App.1991), *reh'g denied with opinion,* 585 N.E.2d 729. *J.A.W.* involved a mandate action seeking to compel the juvenile parole board to consider parole eligibility based on criteria enumerated by administrative rule only (e.g., the nature of the offense, the offender's criminal history, etc.). Although the court affirmed the trial court's dismissal of the mandate action on the merit s, it also concluded, as a threshold issue, that the mandate action was proper because the preclusive effect of Section 5(6) indicated the relator "had no adequate remedy at law." 581 N.E.2d at 991. Thus, consistent with *J.A.W.,* we conclude the trial court does not lack jurisdiction over Varner's mandate action.

Although we conclude the trial court has jurisdiction over Varner's mandate action, we note in closing that there is a line of cases not cited by the parties— *Ratliff v. Cohn,* 693 N.E.2d 530 (Ind.1998); *Blanck v. Indiana Department of Correction,* 829 N.E.2d 505 (Ind.2005); *Kimrey v. Donahue,* 861 N.E.2d 379 (Ind.Ct.App. 2007); and *Israel v. Indiana Department of Correction,* 868 N.E.2d 1123 (Ind. 2007)—standing for the general proposition that trial courts lack subject matter jurisdiction over claims by inmates of the Department of Correction ("DOC") unless the claim either is based on the violation of a statute that grants the inmate an explicit private right of action or the claim alleges a constitutional violation. *See Kimrey,* 861 N.E.2d at 382. We endeavor to explain why Varner's mandate action does not fall

within this line of cases, but to do that, we must initially provide some background for each case.

Starting with *Ratliff v. Cohn*, 693 N.E.2d 530 (Ind.1998), our supreme court implied that Section 5(6) does not preclude judicial review of claims that are of constitutional magnitude. *Ratliff* involved, among other constitutional claims, alleged violations of the Eighth and Fourteenth Amendments of the United States Constitution based on a DOC decision to incarcerate a fourteen-year-old inmate at an adult prison, albeit in a segregated special needs unit. In a brief rebuke of the DOC's argument that Section 5(6) precluded judicial review of such claims, the court concluded that

> [t]here is nothing in this statute to support the Commissioner's broad statement that courts lack the power of judicial review over alleged violations of an inmate's right to medical treatment under the Eighth Amendment and an inmate's constitutionally protected interests in conditions of reasonable care and safety under the Fourteenth Amendment. The grounds urged by the Commissioner in support of his challenge to the trial court's jurisdiction are insufficient to undermine the Marion Superior Court's general subject-matter jurisdiction.

693 N.E.2d at 548.

Cases subsequent to *Ratliff*, however, have been less inclined to limit the scope of Section 5(6), either on the ground that the right alleged to have been violated is merely statutory in nature or that the right pertains to prison discipline, or both. These principles were on display in *Blanck v. Indiana Department of Correction*, 829 N.E.2d 505 (Ind.2005), where an inmate challenged a DOC decision to segregate him from the general prison population for disciplinary reasons. Although the inmate claimed several statutes granted him the right to challenge the DOC's decision, *see* 829 N.E.2d at 508–09, the court concluded that even if the inmate enjoyed such statutory rights, Section 5(6) precluded judicial review, *id.* at 510. The court based its conclusion on the general proposition that "[f]or a quarter-century, our Court has held that DOC inmates have no common law, statutory, or federal constitutional right to review in state court DOC disciplinary decisions," *id.* at 507, and, more to the point, "that the clear intent of the Legislature here is to deny to inmates charged with or found guilty of misconduct the procedure specified in the AOPA, including judicial review," *id.* at 510. The court also distinguished *Ratliff*, describing it as involving claims that were "of a fundamentally different character than Blanck's" and reasoning that its "holding does not extend to prison discipline or misconduct cases." *Id.* at 511.

*Blanck's* application of Section 5(6) has been extended in at least two instances. In the first, *Kimrey v. Donahue*, 861 N.E.2d 379 (Ind.Ct.App.2007), *trans. denied*, inmates challenged a DOC policy prohibiting possession of sexually explicit printed materials on the ground that the policy violated Indiana Code section 11–11–3–6, which precluded the DOC from prohibiting such materials unless they were obscene under Indiana law. The court reasoned that *Blanck* stood for the proposition that trial courts lack jurisdiction over inmate claims for violations of alleged statutory rights "unless an explicit private right of action is afforded by statute or an allegation is made that constitutional rights are being violated." 861 N.E.2d at 382; *but cf., Montgomery v. Ind. Dep't of Corr.*, 794 N.E.2d 1124, 1127 (Ind. Ct.App.2003) ("The statute exempting certain DOC actions from the AOPA does not divest the judiciary of subject-matter juris-

diction over alleged violations of constitutional rights or . . . statutory and constitutional rights."), *trans. denied.* Applying this interpretation of *Blanck,* the court noted that because Indiana Code section 11–11–3–6 did not provide for a private right of action and because the inmates did not allege their constitutional rights had been violated, Section 5(6) precluded judicial review of their challenge. *Kimrey,* 861 N.E.2d at 383.

In the second instance, *Israel v. Indiana Department of Correction,* 868 N.E.2d 1123 (Ind.2007), an inmate challenged the DOC's decision to withdraw funds from the inmate's trust account to provide restitution to a prison guard for medical expenses the guard incurred as a result of an attack by the inmate. Characterizing the DOC's decision to withdraw funds as disciplinary in nature, the court repeated its observation in *Blanck* that "[f]or a quarter-century, our Court has held that DOC inmates have no common law, statutory, or federal constitutional right to review in state court DOC disciplinary decisions," 868 N.E.2d at 1124, and went on to conclude that because the DOC's decision was "agency action related to an offender within the jurisdiction of the department of correction," it was not subject to judicial review, *id.* (quoting *Blanck,* 829 N.E.2d at 510).

The principle distinction between this case and *Blanck* and *Israel* is that the latter cases sought review of DOC decisions pertaining to prison discipline. Indeed, both the *Blanck* and *Israel* opinions took pains to describe the inmates' claims as seeking judicial review of such a decision. *See Blanck,* 829 N.E.2d at 507; *Israel* 868 N.E.2d at 1124. Although we recognize the observation in *Kimrey* that *Blanck* has "broader application" than prison disciplinary cases, *Kimrey,* 861 N.E.2d at 382, we do not think the *Kimrey* court had a case such as Varner's in mind

when it made that observation. Given that *Kimrey* itself involved a DOC policy prohibiting possession of sexually explicit printed materials, it would appear that *Blanck* was extended to preclude judicial review of not only disciplinary decisions, but also decisions such as the DOC policy that regulate the inmate population more generally.

Viewed in this light, Varner's claim differs substantially from the claims in *Blanck, Kimrey,* and *Israel* in terms of the type of claim asserted and the scope of the claim. Regarding the type of claim, Varner's mandate action can hardly be described as pertaining to regulation of the inmate population generally, let alone pertaining to a prison disciplinary decision. Regarding scope, we note that Varner does not challenge the Board's substantive decision to grant or deny parole, but merely seeks to vindicate an alleged statutory procedural right to have that decision made by a full, five-member Board. As such, we conclude Varner's mandate action does not fall within the *Ratliff–Blanck–Kimrey–Israel* line of cases and reiterate our conclusion above that the trial court does not lack subject matter jurisdiction over his claim.

## II. Dismissal Pursuant to Prescreening Statutes

Indiana Code section 34–58–1–2(a) states in relevant part that a pro se inmate claim "may not proceed if the court determines the claim . . . is not a claim upon which relief may be granted. . . ." This language, like Indiana Trial Rule 12(B)(6), requires the trial court to determine whether a claim is legally sufficient. *See McPeek v. McCardle,* 888 N.E.2d 171, 173 (Ind.2008); *Peterson v. Lambert,* 885 N.E.2d 719, 721 (Ind.Ct.App.2008). We review such determinations de novo, taking as true all allegations upon the face of the complaint and dismissing only if the

plaintiff would not be entitled to recover under any set of facts admissible under those allegations. *Meyers v. Meyers,* 861 N.E.2d 704, 705 (Ind.2007).

As mentioned above, Indiana Code section 34–27–3–1 states that "[a]n action for mandate may be prosecuted against any inferior tribunal, corporation, public or corporate officer, or person to compel the performance of any … act that the law specifically requires … or … duty resulting from any office, trust, or station." Broadly stated, the language of the statute suggests that a mandate action typically turns on whether the relator can establish the following: 1) an entity or person has failed either to perform a specific act or discharge a particular duty and 2) a statute plainly requires the entity or person to perform the act or discharge the duty at issue. This general principle is best illustrated through several examples.

In *Nass v. State ex rel. Unity Team,* 718 N.E.2d 757, 766–67 (Ind.Ct.App.1999), *trans. denied,* a panel of this court affirmed the trial court's mandate requiring the state auditor to honor non-union state employees' requests for voluntary wage assignments of fair share payments. In so affirming, the panel interpreted the statute governing voluntary wage assignments, Indiana Code section 22–2–6–2, as requiring the auditor to honor validly executed voluntary wage assignments for fair share payments. 718 N.E.2d at 767. Although the pan el did not explicitly state so, this interpretation, coupled with the auditor's concession that she had not honored the assignments, rendered the employees' mandate action appropriate because it was, to invoke the language of Indiana Code section 34–27–3–1, an action against a public officer "to compel the performance of [an] act that the law specifically requires …."

Contrasting *Nass,* yet further enforcing the general principle stated above, are *Perry v. Ballew,* 873 N.E.2d 1068 (Ind.Ct. App.2007), and *State ex. rel. Steinke v. Coriden,* 831 N.E.2d 751 (Ind.Ct.App. 2005). *Perry* involved a trial court mandate requiring a municipal sewer department to issue a permit allowing the relator to tap into a sewer line. In reversing the trial court's mandate, this court noted that although the sewer department was responsible for issuing such permits, there was "no authority *requiring* that the [department] issue a tap-in permit to anyone who requests one." 873 N.E.2d at 1073 (emphasis in original). As such, the court concluded the trial court's mandate was improper because the sewer department was not under a clear legal duty to issue a permit. *Id.* at 1074.

*Coriden* involved an attorney-relator's mandate action based in part on allegations that the members of the worker's compensation board were not adequately discharging their duties and that such conduct harmed attorneys who practiced before the board and members of the general public. Although the court affirmed the trial court's dismissal of the mandate action on the ground that the attorney-relator lacked standing, *see* 831 N.E.2d at 754–57, it went on to explain in dictum that even if the attorney-relator did not lack standing, the mandate action would have failed because it did not purport to compel the board to perform the type of specific acts contemplated by Indiana Code section 34–27–3–1:

> Here, … Steinke sought to compel the Board to "do" something much more general, i.e., to adhere to eligibility requirements for membership on the Board. No specific action on the part of the Board Members was sought, and therein lies the problem. The "act" that Steinke seeks to compel is not really an act at all. Rather, it is a general re-

quest that the Board Members adhere to the rules pertaining to membership requirements. Such an edict in this circumstance is not within the purview of the judiciary.

*Id.* at 758.

Consistent with the principles expressed in *Nass, Perry,* and *Coriden,* and recognizing that we must take the facts alleged by Varner to be true, *see Meyers,* 861 N.E.2d at 705, we conclude his mandate action states a claim upon which relief can be granted. Varner's mandate action is based on two principle allegations: 1) the Board determined his parole eligibility by a four-member vote and 2) the Board is statutorily obligated under Indiana Code section 11–13–3–3(b) to determine his parole eligibility by a full, five-member vote. These allegations make Varner's mandate action consistent with the action in *Nass* and distinguishable from the action in *Perry* because it is predicated on a clear statutory requirement—in *Nass,* that the auditor honor validly execute wage assignments pursuant to Indiana Code section 22–2–6–2; here, that the Board determine parole eligibility by a five-member vote pursuant to Indiana Code section 11–13–3–3(b); but in *Perry,* that the sewer district was merely responsible for, and not required to, issuing permits to applicants. We also note that the relief Varner seeks is far more specific than the "general request" in *Coriden,* 831 N.E.2d at 758. That is, Varner does not ask the trial court to second-guess the Board and declare him eligible for parole; he merely requests the Board to determine such eligibility through a five-member vote as he alleges is required by Indiana Code section 11–13–3–3(b). Accordingly, we conclude Varner's mandate action states a claim upon which relief can be granted, which means the trial court's summary dismissal of the mandate action was improper.

### III. Resolution on the Merits

Ordinarily, a conclusion that a complaint states a claim upon which relief can be granted results in remand for the parties to proceed with discovery and for the trial court to ultimately resolve the claim on its merits through either a ruling on summary judgment or a ruling after trial. *See, e.g., Gray v. Westinghouse Elec. Corp.,* 624 N.E.2d 49, 54 (Ind.Ct.App. 1993), *trans. denied.* However, on remand, the trial court would be charged with the sole task of determining whether Indiana Code section 11–13–3–3(b) requires a five-member vote. This issue involves no factual dispute and is the primary, if not the sole, issue the parties address in their briefs. We also note that because this question is one of law, a decision by the trial court is not entitled to deference because we review a trial court's interpretation of a statute de novo. *Ross v. Harris,* 860 N.E.2d 602, 606 (Ind.Ct. App.2006), *trans. denied.* Thus, because the issue is squarely before us, and because our resolution would promote judicial economy, we elect to address the issue on its merits.

We note initially the following well-established rules of statutory interpretation:

When courts set out to construe a statute, the goal is to determine and give effect to the intent of the legislature. The first place courts look for evidence is the language of the statute itself, and courts strive to give the words their plain and ordinary meaning. We examine the statute as a whole and try to avoid excessive reliance on a strict literal meaning or the selective reading of individual words. We presume the legislature intended the language used in the statute to be applied logically, consistent with the statute's underlying policy and goals, and not in a manner that

would bring about an unjust or absurd result.

*Cooper Indus., LLC v. City of South Bend,* 899 N.E.2d 1274, 1283 (Ind.2009) (citation omitted).

As mentioned in Part I above, Indiana Code section 11–13–3–3(b) states in relevant part that a parole eligibility hearing

> shall be conducted by one (1) or more of the parole board members. If one (1) or more of the members conduct the hearing on behalf of the parole board, the final decision shall be rendered by the full parole board based upon the record of the proceeding and the hearing conductor's findings.

Ind.Code § 1–13–3–3(b). Varner argues that "final decision" means the decision to grant or deny parole and that "full parole board" means all five members. The State counters that because the Board's rules define a full board as consisting of at least three members, *see* 220 Ind. Admin. Code 1.1–2–2(a)(3) and (4), the four-member vote was a proper discharge of its obligation under Indiana Code section 11–13–3–3(b).

▮▮ The term "final decision" is not statutorily defined, but we agree with Varner that it means the decision to grant or deny parole. For its part, the State offers no alternative interpretation, and section 3(b) states that the purpose of a parole eligibility hearing is to "determine whether parole will be granted or denied." Thus, "final decision" can only be reasonably interpreted to mean the decision to grant or deny parole.

▮▮ Like "final decision," the term "full parole board" is not statutorily defined. However, Indiana Code section 11–9–1–1(a) establishes that the "parole board" consists "of five (5) members appointed by the governor ....," and Indiana Code section 11–9–1–2(a)(2) states that "[t]he parole board shall ... make

parole release and revocation decisions under IC 11–13–3 ...." These provisions suggest the term "parole board" means all five board members. Given this starting point, it is apparent that the addition of "full" to "parole board" in section 3(b) cannot reasonably be interpreted as meaning less than all five board members. Indeed, "full" appears to have been inserted before "parole board" in section 3(b) to reinforce the notion that all five board members must render the final decision. Such an interpretation becomes more apparent when one considers that the clause preceding the term "full parole board" states that one or more board members may conduct the hearing on behalf of the parole board. The addition of "full," then, is simply meant to emphasize that although less than five board members may conduct the hearing, the final decision must be rendered by a "full," five-member parole board. Lest there be any doubt regarding this interpretation, Indiana Code section 11–9–1–3 states that "[w]henever the parole board is conducting an inquiry, investigation, hearing, or review, that function may be delegated to one (1) or more members of the parole board." The statute then goes on to state that "[i]f one (1) or more member acts on behalf of the board that member or employee may exercise all the powers of the parole board *except the power to render a final decision as to any matter.*" Ind.Code § 11–9–1–3(b) (emphasis added). Thus, the plain language of subsection 3(b), as well as the foregoing accompanying statutes, convinces us that the legislature intended "full parole board" to mean all five members of the Board.

We note in closing that the State's sole argument that the four-member vote is sufficient is based on the Board's rules, specifically subsections (a)(3) and (4) of 220 Indiana Administrative Code 1.1–2–2. Those subsections state that "[t]hree (3)

members of the board constitute a quorum," 220 Ind. Admin. Code 1.1–2–2(a)(3), and that "[t]he board shall take no action upon any matter requiring a board action unless at least three (3) board members are in agreement on the action," 220 Ind. Admin. Code 1.1–2–2(a)(4). However, we are aware of no proposition of law that permits an administrative agency to disregard a clear statutory obligation on the ground that its rules impose a lesser obligation. To the contrary, this court has repeatedly observed that an administrative rule may not trump a statute's clear mandate. *See Lee Alan Bryant Health Care Facilities, Inc. v. Hamilton,* 788 N.E.2d 495, 500 (Ind.Ct.App.2003) ("An agency, however, may not by its rules and regulations add to or detract from the law as enacted, nor may it by rule extend its powers beyond those conferred upon it by law. Any regulation that conflicts with statutory law is wholly invalid." (citation omitted)), *clarified on other grounds on reh'g,* 793 N.E.2d 229; *Potts v. Review Bd. of Ind. Employment Sec. Div.,* 438 N.E.2d 1012, 1015–16 (Ind.Ct.App.1982) ("Boards cannot enlarge or vary, by the operation of such rules, the powers conferred upon them by the Legislature, or create a rule out of harmony with the statute. If the rules are in conflict with the state's organic law, or antagonistic to the general law of the state or opposed to the fundamental principles of justice, or inconsistent with the powers confer[r]ed upon such boards, they are invalid." (citations and quotation marks omitted, correction in original)). We therefore reject the State's argument that the Board's administrative rules control its voting obligations.

Having determined Indiana Code section 11–13–3–3(b) clearly expresses the legislature's intent that a full, five-member Board is obligated to determine Varner's parole eligibility, we think it necessarily follows that Varner has clearly and unquestionably demonstrated he is entitled to mandate. Stated differently, Varner has demonstrated 1) the Board determined his parole eligibility by a four-member vote and 2) the Board is statutorily obligated to determine his parole eligibility by a full, five-member vote. Varner has therefore fulfilled the requirements of a mandate action, and we direct the trial court to enter judgment in his favor and grant the relief he requests, specifically, "to issue a mandate requiring the Indiana Parole Board to render its final decision determining whether Varner should be granted or denied parole after the final member, Mr. Randall P. Gentry, casts his vote based upon the record of the proceedings and the hearing conductor's findings." Appellant's App. at 4.

### Conclusion

The trial court improperly dismissed Varner's mandate action for lack of subject matter jurisdiction, and Varner's mandate action states a claim upon which relief can be granted. Moreover, because we interpret Indiana Code section 11–13–3–3(b) as obligating the Board to determine parole eligibility by a full, five-member vote, Varner has proved as a matter of law that he is entitled to the relief he seeks. We therefore instruct the trial court to enter judgment in favor of Varner and to afford him relief in a manner not inconsistent with this opinion.

Reversed.

CRONE, J., and BROWN, J., concur.