**STATE of Indiana, Appellant–Plaintiff,**

v.

**Brian K. PRICE, Appellee–Defendant.**

**No. 79A02–9911–CR–749.**

Court of Appeals of Indiana.

Feb. 29, 2000.

Transfer Denied May 4, 2000.

---

Jeffrey A. Modisett, Attorney General of Indiana, Barbara Gasper Hines, Deputy Attorney General, Indianapolis, Indiana, Attorneys for Appellant.

Earl McCoy, Lafayette, Indiana, Attorney for Appellee.

## OPINION

HOFFMAN, Senior Judge

Plaintiff–Appellant State of Indiana appeals after the dismissal of a case filed against Defendant–Appellee Brian K. Price. We reverse and remand.

The following issues have been raised for our review:

1. Whether the State timely filed its praecipe.[1]

2. Whether the trial court erred in granting Price's motion to suppress.

On September 16, 1998, Price was driving an automobile on a highway in Tippecanoe County. Lafayette Police Officer Brad Bishop observed that Price was apparently not wearing his seatbelt. Officer Bishop stopped Price, walked to Price's automobile, and verified that Price's seatbelt was unfastened.

As he stood near Price's automobile, Officer Bishop smelled the odor of alcohol. He then observed that Price's speech was slurred and that Price's eyes were watery and red. Officer Bishop administered a field sobriety test and the Gaze Nystagmus test. Price failed both tests. Price tested at .201% of alcohol by weight in grams in 100 milliliters of his blood.

Price was charged with operating a vehicle while intoxicated, a Class A misdemeanor; operating a vehicle with at least a .10% of alcohol by weight in grams in 210 liters of the person's breath or 100 milliliters of the person's blood; a Class C misdemeanor; and operating a vehicle while intoxicated after having a prior conviction for operating a vehicle while intoxicated, a

Class D felony. A habitual substance offender enhancement was also included in the charge.

Price filed a motion to suppress the evidence obtained during the stop. The motion asserted that the stop constituted a *per se* "illegal search and seizure" in violation of art. I, § 11 of the Indiana Constitution, and that Ind.Code § 9–19–10–3, the seatbelt enforcement statute, was unconstitutionally vague. (R. 36). A memorandum in support of the motion raised the issue of whether the seatbelt enforcement statute was unconstitutional as a violation of art. I, § 23 of the Indiana Constitution. The trial court determined that the stop was not authorized and suppressed all of the evidence obtained after the stop of Price's automobile. The State subsequently filed a motion to dismiss, which was granted. The State filed its praecipe on the same day as the grant of dismissal.

■ Noting that the State is contesting the propriety of the trial court's suppression order, Price contends that the State should have filed its praecipe within thirty days of entry of that order. Price argues that because the State did not file the praecipe within thirty days of the entry of the suppression order, it has waived its right to appeal. In support of his contention, Price cites cases holding that (1) a suppression order is "deemed" final when it has the effect of precluding further prosecution, *State v. Pease*, 531 N.E.2d 1207, 1208–09 (Ind.Ct.App.1988); and (2) the grant of a motion to suppress is "tantamount to dismissal, and therefore appealable," *State v. McLaughlin*, 471 N.E.2d 1125, 1129 (Ind.Ct.App.1984), *overruled by State v. Garcia*, 500 N.E.2d 158 (Ind.1986); *State v. Williams*, 445 N.E.2d 582, 584 (Ind.Ct.App.1983).

The right of the State to appeal in a criminal action is statutory, and the State

---

1. This issue was raised by Price is his appellee's brief as a cross-appeal. We address this issue first because a ruling in Price's favor would deprive this court of jurisdiction to address the second issue.

cannot appeal absent a specific grant of authority by the legislature. *State v. Aynes,* 715 N.E.2d 945, 948 (Ind.Ct.App. 1999). Ind.Code § 35–38–4–2(5) allows the State to appeal from "an order granting a motion to suppress evidence, if the ultimate effect of the order is to preclude further prosecution." In addition, Ind. Code § 35–38–4–2(1) allows the State to appeal from "an order granting a motion to dismiss an indictment or information." *See State v. McNulty,* 89 N.E.2d 622 (Ind. 1950) (holding that an appeal from the sustaining of a motion to quash must be suspended until a final judgment quashing the judgment is entered by the trial court).

In asking the trial court to enter an order of dismissal, the State was asserting that the ultimate effect of the suppression order was to prevent further prosecution. The trial court's entry of the order of dismissal was a final order recognizing the preclusive effect of the suppression order. While we agree with *Pease, McLaughlin, and Williams* that a suppression order may be "tantamount to dismissal," thereby giving the State the right to raise an appeal which is interlocutory in nature as a "final" appeal, we do not agree that these cases hold that the State is prevented from waiting for a final order of dismissal to initiate its appeal of a suppression order. When appealing in this manner, the State is required to file its praecipe within thirty days of the trial court's entry of the order of dismissal. Here, the State timely filed its praecipe as such filing occurred on the same day as the entry of the dismissal order. Accordingly, the State has not waived its right to appeal.

The State contends that the trial court erred in suppressing evidence of Price's intoxication obtained from the stop of Price's vehicle for a seatbelt violation. We will reverse the trial court's ruling only when the State shows that the trial court's ruling is contrary to law, and where the evidence is without conflict and leads to a conclusion opposite that reached by the trial court. *State v. Farber,* 677 N.E.2d

1111, 1114 (Ind.Ct.App.1997). *trans. denied.* We consider only the evidence most favorable to the trial court's ruling, and we will not reweigh the evidence or judge the credibility of witnesses. *Id.*

The "search and seizure" issue raised in Price's motion to suppress was discussed by our supreme court in *Baldwin v. Reagan,* 715 N.E.2d 332 (Ind.1999). In *Baldwin,* the court held that a stop pursuant to Ind.Code § 9–19–10–3 does not constitute a *per se* violation of art. I, § 11 of the Indiana Constitution. The court also held in *Baldwin* that Ind.Code § 9–19–10–3 was not unconstitutionally vague. Accordingly, under *Baldwin,* Officer Bishop's stop of Price's automobile was neither a *per se* violation of art. I, § 11 of our constitution nor an illegal stop based on an unconstitutionally vague statute.

The State bears the burden of establishing, in the totality of the circumstances, that an intrusion was reasonable. *Baldwin,* 715 N.E.2d at 337. With regard to the seatbelt enforcement statute, "a police officer may not stop a motorist in Indiana for a possible seatbelt violation unless that officer reasonably suspects that the driver or a passenger in the vehicle is not wearing a seatbelt as required by law." *Id.* Reasonable suspicion exists where the officer "observes the driver or passenger under circumstances (e.g. bodily movement, distance, angle, lighting, weather) that would cause an ordinary prudent person to believe that the driver or passenger is not wearing a seatbelt as required by law." *Id.*

The evidence reviewed by the trial court was in the form of Officer Bishop's deposition. In the deposition, Officer Bishop stated that he was driving behind Price's vehicle and observed that Price's seatbelt was "slack behind" Price and that the "seatbelt itself was laying [sic] slack alongside the seat." (R. 26). "At that point in time," Officer Bishop "didn't know whether or not [Price] was wearing his lap belt. . . ." (R. 26). However, Officer Bish-

op then pulled up next to Price at a stop light, and he saw "the entirety of the belt right next to [Price]." (R. 27). Officer Bishop then initiated the stop. This evidence, even viewed in a light most favorable to Price, unequivocally leads to the conclusion that Officer Bishop had reasonable suspicion to make the stop. Therefore, the trial court's grant of the motion to suppress is erroneous to the extent that it was based on the conclusion that Officer Bishop did not have a reasonable suspicion to stop Price for a violation of the seatbelt statute.[2]

The final question before us is whether the seatbelt enforcement statute violates art. I, § 23 of the Indiana Constitution. This provision, denominated in our constitution as the "equal privileges clause," provides that "[t]he General Assembly shall not grant to any citizen, or class of citizens, privileges or immunities, which, upon the same terms, shall not equally belong to all citizens."[3]

 In considering a constitutional challenge to a statute, we presume that the statute is valid, and place the burden upon the party challenging it to clearly overcome the presumption by a contrary showing. *Chamberlain v. Parks,* 692 N.E.2d 1380, 1382 (Ind.Ct.App.1998), *trans. denied.* The party challenging the statute based on a purported improper classification must negate every reasonable basis for the classification. *Id.* Consequently, all reasonable doubts must be resolved in favor of a statute's constitutionality. *Id.*

 The purpose of the equal privileges clause is to prevent the distribution of extraordinary benefits or burdens to any group. *Helton v. State,* 624 N.E.2d 499, 511 (Ind.Ct.App.1993), *trans. denied,* *cert. denied,* 520 U.S. 1119, 117 S.Ct. 1252,

137 L.Ed.2d 333. In *Collins v. Day,* 644 N.E.2d 72, 80 (Ind.1994), our supreme court set forth a two-part test by which to judge whether a statute is in violation of equal privileges clause. First, the court stated that "the disparate treatment accorded by the legislation must be reasonably related to inherent characteristics which distinguish the unequally treated classes." *Id.* Second, the court stated that "the preferential treatment must be uniformly applicable and equally available to all persons similarly situated." *Id.* The court noted that in determining whether a statute complies with the equal privileges clause, courts "must exercise substantial deference to legislative direction." *Id.*

 Here, Ind.Code § 9–19–10–2 provides that each front seat occupant of a "passenger motor vehicle" equipped with a safety belt "shall have a safety belt properly fastened about the occupant's body at all times when the vehicle is in forward motion." Ind.Code § 9–19–10–3, the seatbelt enforcement statute, provides that "[a] vehicle may be stopped to determine compliance with this chapter." When the two statutes are read together it is clear that the "vehicle" referred to in Sec. 3 is a "passenger motor vehicle." For purposes of the seatbelt statute, the term "passenger motor vehicle" excludes "trucks, tractors, and recreational vehicles." Ind.Code § 9–13–2–123(b).

Price contends that Ind.Code § 9–19–10–3 is unconstitutional as a violation of the equal privileges clause because it "does not apply to individuals who drive trucks or recreational vehicles rather than cars." Appellee's Brief at 20. Price concludes that "individuals with higher incomes who drive expensive and popular sport utility

---

2. The trial court's order does not indicate the basis for its grant of the suppression motion.

3. Indeed, it appears that the trial court determined that the statute did violate the equal privileges clause. In ruling on a motion for reconsideration filed by the State, the court indicated that it was denying the motion to

reconsider on the basis that its grant of the suppression motion "was different than the *Baldwin* case." (R. 80). The only non-*Baldwin* question presented to the trial court was the validity of the enforcement statute under art. 1, § 23.

vehicles and trucks are not subject to stops by police officers for the sole purpose of determining whether they are wearing seatbelts. Consequently, individuals who cannot afford sport utility vehicles, such as the Defendant, a black male operating a 1991 Oldsmobile four-door sedan, are denied equal protection." Appellee's Brief at 20–21.[4]

Initially, we observe that Price has failed to inform himself as to the definitions of the terms "truck" and "recreational vehicle." A "truck" refers to a motor vehicle "designed, used, or maintained primarily for the transportation of property." Ind.Code § 9–13–2–188(a). A "recreational vehicle" refers to a vehicle with or without motive power "equipped exclusively for living quarters for persons traveling upon the highways." Ind.Code § 9–13–2–150(a). Neither definition refers to the passenger vehicles described by Price as "expensive and popular sport utility vehicles and trucks," but instead refers to vehicles designed for transportation of property.

Applying the *Collins* deferential standard of review, we find that there are inherent distinctions between the classifications made by the legislature in the seatbelt enforcement statute. We mention only three. First, the passenger vehicles covered by the statute presumably travel at a higher rate of speed than the cargo-laden trucks or the huge recreational vehi-

cles exempted from the statute's coverage. Thus, the need for the protection afforded by seatbelts is more apparent. Second, the trucks and recreational vehicles provide significantly more structural protection in collisions than the passenger motor vehicles mentioned in the statute. Third, the detection by reasonable means of non-use of a seatbelt in a typical passenger motor vehicle is much more possible than in a truck or recreational vehicle where the front-seat occupants are not so easily observable. We therefore conclude that the disparate treatment in seatbelt enforcement statute is reasonably related to inherent characteristics which distinguish the unequally-treated classes. Accordingly, such classification does not constitute a violation of the equal privileges clause of the Indiana Constitution.

The trial court erred in granting Price's motion to suppress. Accordingly, we reverse and remand with instructions that the trial court vacate its order.

RILEY, J., and NAJAM, J., concur.

---

4. We note that the State completely failed to address this issue in either of its appellate briefs.