**Gregory S. KELVER, Appellant–Defendant,**

v.

**STATE of Indiana, Appellee–Plaintiff.**

**No. 46A03–0308–CR–322.**

Court of Appeals of Indiana.

May 13, 2004.

V. Michael Drayton, Sallwasser and McCain, LaPorte, IN, Attorney for Appellant.

Steve Carter, Attorney General of Indiana, Ellen H. Meilaeder, Deputy Attorney General, Indianapolis, IN, Attorneys for Appellee.

**OPINION**

RILEY, Judge.

*STATEMENT OF THE CASE*

Appellant–Defendant, Gregory S. Kelver (Kelver), appeals the trial court's judgment against him for failure to wear a seatbelt, a Class D infraction, Ind.Code § 9–19–10–2.

We affirm.

*ISSUES*

Kelver raises three issues on appeal,[1] which we restate as the following two:

1. Whether I.C. § 9–19–10–2, which mandates seatbelt usage by front seat occupants of passenger motor vehicles, violates Article I, Section 23 of the Indiana Constitution; and

---

1. Kelver raises a third issue of whether I.C. § 9–19–10–2 is unconstitutionally vague. However, Kelver fails to support this assertion with cogent argument and citation to any authority or statutes in violation of App. R. 46(A)(8)(a). For this reason, we find his argument waived.

2. Whether I.C. § 9–19–10–2 violates Kelver's right to substantive due process.

## FACTS AND PROCEDURAL HISTORY

On September 4, 2002, Kelver was driving his GMC Jimmy (Jimmy) near the intersection of State Road 2 and Andrew Avenue in LaPorte, Indiana, where the LaPorte City Police Department was conducting a "seatbelt enforcement zone." (Appellant's App. p. 6). As Kelver drove through the intersection, he was not wearing a seatbelt, so the police motioned to him to pull off the road and into a parking lot. At the time, Kelver's Jimmy was registered as a passenger motor vehicle and, as such, bore a passenger car license plate. As a result of the stop, Kelver received a complaint and summons for not wearing his seatbelt in violation of I.C. § 9–19–10–2.

On June 2, 2003, Kelver's case was submitted to the trial court upon depositions of police officers and a stipulation of facts. Kelver also filed a trial brief on July 2, 2003. The State declined to file a trial brief. On July 16, 2003, the trial court entered its judgment in favor of the State and against Kelver.

Kelver now appeals. Additional facts will be supplied as necessary.

## DISCUSSION AND DECISION

### I. Equal Privileges and Immunities

■ Kelver first asserts that I.C. § 9–19–10–2, along with the supporting statutory definitions, violates the equal privileges and immunities clause of the Indiana Constitution and the equal protection clause of the Fourteenth Amendment to the U.S. Constitution. However, at the outset, we note that Kelver is required to set forth separate analyses for the state constitutional challenge and the Fourteenth Amendment challenge. See Collins v.

Day, 644 N.E.2d 72, 75 (Ind.1994)(articulating independent analytical methodologies for claims involving alleged violations of Article I, Section 23 of the Indiana Constitution and the equal protection clause of the Fourteenth Amendment to the U.S. Constitution); see also Brown v. State, 744 N.E.2d 989, 995 (Ind.Ct.App.2001)(failure to provide separate analysis of state equal privileges challenge waives appellant's state constitutional argument). Nevertheless, Kelver fails to provide a separate analysis for his equal protection clause challenge. Consequently, his federal constitutional argument is waived and we consider only his state constitutional claim. See Brown, 744 N.E.2d at 995.

Article I, Section 23 of the Indiana Constitution states: "[t]he General Assembly shall not grant to any citizen, or class of citizens, privileges or immunities, which, upon the same terms, shall not equally belong to all citizens." In Collins, our supreme court held that:

Article I, Section 23 of the Indiana Constitution imposes two requirements upon statutes that grant unequal privileges or immunities to differing classes of persons. First, the disparate treatment accorded to the legislation must be reasonably related to inherent characteristics which distinguish the unequally treated classes. Second, the preferential treatment must be uniformly applicable and equally available to all persons similarly situated. Finally in determining whether a statute complies with or violates Section 23, courts must exercise substantial deference to legislative discretion.

Collins, 644 N.E.2d at 80.

■ Furthermore, in considering such a constitutional challenge to a statute, we presume that the statute is valid, and place the burden upon the challenging par-

ty to clearly overcome the presumption by a contrary showing. *State v. Price,* 724 N.E.2d 670, 675 (Ind.Ct.App.2000), *trans. denied.* The party challenging the statute based on a purported improper classification must negate every reasonable basis for the classification. *Id.* All reasonable doubts must be resolved in favor of a statute's constitutionality. *Id.*

■ Indiana Code section 9–19–10–2 provides, in pertinent part:

Each front seat occupant of a passenger motor vehicle ... shall have a safety belt properly fastened about the occupant's body at all times when the vehicle is in forward motion.

A "passenger motor vehicle" is defined by I.C. § 9–13–2–123(a) as "a motor vehicle designed for carrying passengers." For purposes of I.C. chapter 9–19–10, the term "passenger motor vehicle" includes buses, school buses, and · private buses, and excludes trucks, tractors, and recreational vehicles. I.C. § 9–13–2–123(b). A "truck" is a "motor vehicle designed, used or maintained primarily for the transportation of property." I.C. § 9–13–2–188(a).

Here, Kelver argues that I.C. § 9–19–10–2 grants unequal privileges to certain citizens and subjects other citizens to unequal treatment and unequal burdens. Specifically, Kelver argues that the statutory definition of "truck" includes no inherent characteristics to distinguish trucks from certain passenger motor vehicles. He offers up the depositions of various LaPorte City police officers and their varying explanations of what constitutes a truck in support of his contention. Kelver contends that those who are expressly ex-

empt from the seatbelt requirement of the statute are granted the privilege of exemption from the corresponding punishment for noncompliance with the statute.[2] However, we find Kelver's argument unavailing.

First, as the State correctly notes, we have already considered this issue in *Price,* 724 N.E.2d at 675–76 (wherein we determined that I.C. § 9–19–10–2 does not violate the equal privileges and immunities clause of the Indiana Constitution). In applying the *Collins* deferential standard of review, the *Price* court set forth three examples of inherent distinctions between the classifications of motor vehicles that are reasonably related to the disparate treatment of unequally-treated classes in the enforcement of the seatbelt statute. *Id.* at 676. For instance, trucks provide significantly more structural protection in collisions than the passenger motor vehicles mentioned in the statute. *Id.* Consequently, we reassert our holding in *Price* that there are inherent characteristics in trucks that allow them to be statutorily distinguished from passenger vehicles with regard to the enforcement of this State's seatbelt law. *Id.*

In addition, as this court explained recently in *Owen v. State,* 796 N.E.2d 775 (Ind.Ct.App.2003), *trans. denied,* the Indiana Bureau of Motor Vehicles (BMV) oversees the registration of motor vehicles and the issuance of license plates in our state. *Id.* at 777. As stated above, for purposes of registering a motor vehicle with the BMV, a "truck" is a vehicle "designed, used or maintained *primarily* for the transportation of property." I.C. § 9–

---

2. Kelver also argues that I.C. § 9–19–10–2 subjects front seat occupants of passenger motor vehicles and backseat occupants to unequal treatment in that it exempts backseat occupants from the seatbelt requirement. Nonetheless, Kelver fails to support this por-

tion of his argument with citation to any authority, statutes, appendix or parts of the record as required by Ind. Appellate Rule 46(A)(8)(a). As a result, we find this argument waived. *See* App. R. 46(A)(8)(a).

13–2–188(a)(emphasis added). However, many motor vehicle models are constructed using a truck chassis and possess the ability either to carry passengers or to convert to a more traditional truck bed for the transportation of property. The BMV affords the owners of these and other trucks, with a declared gross weight not exceeding 7000 pounds, the option of registering their vehicles as either a passenger motor vehicle or a truck, "as long as certain statutory requirements are satisfied." *Owen*, 796 N.E.2d at 777–78. These statutory requirements include the BMV's statutory authority to make the final determination of whether a motor vehicle is described on its registration as a passenger motor vehicle or a truck. I.C. § 9–18–2–20(b)(4). Accordingly, to the extent that Kelver proffers the various explanations of LaPorte City police officers regarding what constitutes a truck, we find the issue resolved by our opinion in *Owen. Owen*, 796 N.E.2d at 777–78.

Moreover, as noted in *Owen*, an owner's ability to "opt-out" of Indiana's seatbelt law by choosing to register an eligible vehicle as a truck rather than a passenger car is a matter best left to our General Assembly. *Id.* at 778. However, as the law stands, the inherent distinctions between a passenger car and a truck, as determined by the BMV, permit the disparate treatment in the enforcement of Indiana's seatbelt law accorded by the General Assembly in I.C. § 9–19–10–2 and its supporting definitions. In addition, this "preferential treatment" is equally available to anyone who owns a motor vehicle that qualifies as a truck and chooses to register and plate the vehicle as a truck. *See Collins*, 644 N.E.2d at 80. Therefore, we hold that I.C. § 9–19–10–2, along with its supporting definitions, does not violate Article I, Section 23 of the Indiana Constitution.

## II. Substantive Due Process Violation

▪ Next, Kelver contends that I.C. § 9–19–10–2 adversely affects his right to substantive due process because it infringes upon his right to choose and decide his own well-being and health care. Substantive due process ensures that a state action is not arbitrary or capricious regardless of the procedures used. *N.B. v. Sybinski*, 724 N.E.2d 1103, 1112 (Ind.Ct. App.2000), *trans. denied.* To show a violation of substantive due process, a party must demonstrate that the challenged law infringes upon a fundamental right or liberty deeply rooted in our nation's history or that the law does not bear a substantial relation to permissible state objectives. *Id.*

In particular, Kelver argues that the seatbelt requirement violates his fundamental right to make decisions relating to his own health and welfare. However, we find Kelver's argument without merit.

Initially, we note that:

[n]either [the Indiana Supreme Court] nor the United States Supreme Court has ever held that there exists a fundamental right to drive a motor vehicle. While the United States Court has blurred the distinction between "right" and "privilege" with respect to driving, that Court did not define driving as a "right" but rather referred to it as an "entitlement."

*Ruge v. Kovach*, 467 N.E.2d 673, 677 (Ind. 1984). Because the U.S. Supreme Court and our state's supreme court have declined to declare driving a fundamental right, it follows that our state's requirement to wear a seatbelt while driving likewise does not violate a fundamental right of the driver.

Furthermore, as the State argues in its Appellee's Brief, the seatbelt requirement does not regulate "intimate decisions relat-

ing to bodily integrity, marriage, procreation, or family", all of which have traditionally received heightened constitutional protection. (Appellee's Br. p. 15). In support of its argument, the State relies upon a case from New York state court entitled *Wells v. State*, 130 Misc.2d 113, 495 N.Y.S.2d 591(N.Y.Sup.Ct.1985). In *Wells*, the New York court rejected an argument based on *Roe v. Wade*, 410 U.S. 113, 93 S.Ct. 705, 35 L.Ed.2d 147 (1973), similar to Kelver's argument in the instant case, by explaining, "the issue of one's right to control one's own body, and the government's attempt to interfere with what takes place inside that body, can hardly be compared with the State's interference with the liberty of the individual inside his or her automobile." *Wells*, 495 N.Y.S.2d at 595. We agree with the New York court's reasoning and adopt it with regard to the issue at hand. Accordingly, we find that there is no fundamental right for an individual to choose whether to wear a seatbelt in a passenger motor vehicle in the state of Indiana.

■ Thus, the seatbelt law need only be reasonably related to a legitimate state interest to defeat Kelver's substantive due process claim. *Terpstra v. State*, 529 N.E.2d 839, 847 (Ind.Ct.App.1988), *reh'g denied*. In this regard, the Indiana General Assembly has a duty to enact legislation that provides for the general welfare and safety of the people of our state. *Id.* at 846. The Indiana seatbelt statute, I.C. § 9–19–10–2, was enacted to promote highway safety and to protect Indiana citizens. *See id.* (statutes concerning driver's licenses and vehicle registration protect Indiana citizens in that they promote highway safety). Highway safety is not merely a legitimate state interest; it is a compelling one. *Id.* at 847. Consequently, we find that I.C. § 9–19–10–2 is reasonably related to legitimate state interests and, therefore, Kel-

ver's substantive due process challenge must fail.

## CONCLUSION

Based on the foregoing, we conclude that: (1) I.C. § 9–19–10–2, along with its supporting statutory definitions, does not violate Article I, Section 23 of the Indiana Constitution; and (2) I.C. § 9–19–10–2 does not violate Kelver's substantive due process right.

Affirmed.

DARDEN, J., and BAILEY, J., concur.