**Eric SMITH, Appellant–Plaintiff,**

**v.**

**INDIANA DEPARTMENT OF CORRECTION, Evelyn Ridley–Turner, Dan McBride, Major Payne, Lieutenant Thompson, Officer Anderson, Officer Backus, Officer Brown, Officer Cole, Officer Patterson, Officer Price, and John Doe, Appellees–Defendants.**

**No. 46A03–0607–CV–327.**

Court of Appeals of Indiana.

Aug. 10, 2007.

Rehearing Denied Sept. 24, 2007.

---

976

Eric D. Smith, New Castle, IN, pro se.

Steve Carter, Attorney General of Indiana, Elizabeth Rogers, Deputy Attorney General, Indianapolis, IN, Attorneys for Appellees.

## OPINION

CRONE, Judge.

### Case Summary

Eric D. Smith filed a complaint against the Indiana Department of Correction and numerous individual prison employees (collectively, "the DOC"). Smith, pro se, appeals the grant of DOC's motion for judgment on the pleadings, the denial of his request for appointment of counsel, the denial of his request to amend his complaint, and the denial of his motion to compel discovery. We affirm.

### Issues

Smith raises four issues on appeal, which we restate as follows:

I. Whether the trial court erred in granting the DOC's motion for judgment on the pleadings;

II. Whether the trial court abused its discretion in denying his request for appointment of counsel;

III. Whether the trial court abused its discretion in denying his request to amend his complaint; and

IV. Whether the trial court erred in denying his motion to compel discovery.

### Facts and Procedural History

The facts as alleged in Smith's complaint follow.[1] On June 18, 2004, Smith was incarcerated in the Maximum Control Facility in Westville. In protest of their failure to receive lunch that day, other prisoners attempted to flood the facility by clogging their toilets and releasing the water from the gaps at the bottom of their cell doors. Smith's cell began to flood with the dirty toilet water from other cells. Smith saw feces and toilet paper in the water and became nauseated. He kicked on his cell door for a moment to gain the attention of the prison officers. Officers Caldwell and Cowgill approached Smith's cell and said that Lt. Thompson instructed them to get Smith's tennis shoes. Smith declined to remove his shoes, stating that he did not want to get his feet in the dirty toilet water. The officers returned with Lt. Thompson, who ordered Smith to take off his shoes and give them to the officers. Smith refused. Offers Caldwell and Cowgill told Smith to "cuff up" so they could take his shoes off. Appellees' App. at 7.[2]

---

1. Smith failed to include a copy of his original complaint in his appendix. We thank the DOC for providing it.

2. Neither party provides the meaning of "cuff up." It appears that this term is an order for the inmate to place the inmate's hands through an opening in the inmate's cell door,

Smith refused. Smith asked for a mop, but the officers made no attempt to assist Smith in removing the water and fecal matter from his cell. Major Payne also came to Smith's cell and demanded Smith's shoes, and again Smith refused. Major Payne then called for a cell extraction team.

The cell extraction team arrived, and an officer told Smith to "cuff up." *Id.* Smith said nothing out of fear. Smith was then sprayed with mace, which caused him to choke, and was left in his cell for several minutes. Some minutes later, Smith was shot with ten to thirty rounds of "mace pellets" that "caused his skin to break, bleed and bruise." *Id.* at 9. Members of the cell extraction team entered Smith's cell, stripped him down to his underwear, and restrained his hands behind his back, inflicting substantial pain in the process. As he was being led out of his cell, he noticed that an officer was videotaping the incident.

Smith was taken to another area of the prison and his face was sprayed with water, presumably to remove the mace. He was put in full restraints and left for two hours. During this time he fell and split his lip and lost the feeling in his left hand. Some of his wounds were photographed, and a nurse inspected his wounds. Ultimately a nurse ordered that the restraints be removed. When Smith returned to his cell, he found that the mace had not been cleaned up, and as he cleaned his cell the mace caused more pain.

On October 28, 2004, Smith filed a complaint against the DOC alleging negligence, violations of Article 1, Sections 3, 9, 11, 15, 16, 18, 23, and 31 of the Indiana Constitution, and violations of Indiana Code Section 11–8–4–8 (requiring that inmates be treated in a reasonable and humane manner), and a request for appointment of counsel. On November 10, 2004, the trial court denied his request for a court-appointed attorney, finding that it was unlikely that Smith would prevail on his claims. Smith filed two additional requests for appointment of counsel, which the trial court denied, finding these additional requests to be repetitive.

On February 22, 2006, Smith filed a motion for summary judgment on his claims of negligence and violations of his rights under Article 1, Sections 15 and 16 of the Indiana Constitution, with a memorandum of law. DOC filed a response in opposition to Smith's motion, and on March 30, 2006, the trial court denied the motion, finding that there existed genuine issues of material fact.

On April 11, 2006, Smith filed a motion for leave to amend his complaint, which the trial court denied on May 9, 2006. On April 13, 2006, Smith filed a motion to compel discovery, specifically the videotape of the cell extraction.[3] On April 25, 2006, the trial court denied Smith's motion to compel discovery. Also that day, the DOC filed a motion for judgment on the pleadings, alleging that Smith's complaint failed to state a claim upon which relief could be granted. On June 14, 2006, the trial court granted the DOC's motion.

Smith appeals.

## Discussion and Decision

### I. Judgment on the Pleadings

 Smith challenges the trial court's grant of the DOC's motion for judgment

so that the inmate may be handcuffed, thereby allowing an officer to enter the cell safely. *Piggie v. Cotton*, 344 F.3d 674, 676 (7th Cir. 2003).

**3.** Smith previously filed motions to compel discovery on March 4, 2005, May 10, 2005, and June 30, 2005, which the trial court denied.

on the pleadings.[4]

> In reviewing a trial court's decision on a motion for judgment on the pleadings, this court conducts a de novo review. The test to be applied when ruling on a T.R. 12(B)(6) motion or a T.R. 12(C) motion that raises the defense of failure to state a claim upon which relief can be granted is whether, in the light most favorable to the non-moving party and with every intendment regarded in his favor, the complaint is sufficient to constitute any valid claim. In applying this test, the court may look only at the pleadings, with all well-pleaded material facts alleged in the complaint taken as admitted, supplemented by any facts of which the court will take judicial notice. We will affirm the trial court's grant of a T.R. 12(C) motion for judgment on the pleadings when it is clear from the face of the pleadings that *one of the parties cannot in any way succeed* under the operative facts and allegations made therein.

*Davis ex rel. Davis v. Ford Motor Co.*, 747 N.E.2d 1146, 1149 (Ind.Ct.App.2001) (citations omitted) (emphasis added).

█ Initially, we observe that Smith's complaint asserts claims against the DOC that are based upon the conduct of the prison officers as they executed their duty to enforce an order. Two recent decisions from our supreme court give us pause to consider whether this case should be dismissed for lack of subject matter jurisdiction. In *Blanck v. Indiana Department of Correction*, 829 N.E.2d 505 (Ind.2005), prison inmate Blanck was convicted pursuant to prison disciplinary procedures for violating prison rules and was placed in a segregation unit. Blanck filed a complaint against the DOC alleging that the DOC failed to conduct periodic review of his segregation as required by statute and that he was entitled to judicial review under the Open Courts Clause of Article 1, Section 12 of the Indiana Constitution. In reviewing his claim, the supreme court began by proclaiming that, "[f]or a quarter-century, our Court has held that DOC inmates have no common law, statutory, or federal constitutional right to review in state court DOC disciplinary decisions." *Id.* at 507 (citing *Riner v. Raines*, 274 Ind. 113, 409 N.E.2d 575 (1980), *Adams v. Duckworth*, 274 Ind. 503, 412 N.E.2d 789 (1980), *Hasty v. Broglin*, 531 N.E.2d 200 (Ind.1988), and *Zimmerman v. State*, 750 N.E.2d 337 (Ind.2001)). The court found that the legislature did not intend for inmates to have a private right of action to enforce the statutes cited by Blanck, observing that Indiana Code Section 4–21.5–2–5(6) specifically excludes "agency action related to an offender within the jurisdiction of the department of correction" from judicial review. *Id.* at 509. The court held that none of the prison discipline statutes cited by Blanck confer subject matter jurisdiction over claims challenging prison disciplinary decisions. *Id.* at 510. In so holding, the court distinguished a prior case, *Ratliff v. Cohn*, 693 N.E.2d 530, 548 (Ind.2998), in which it had rejected the argument that Indiana Code Section 4–21.5–2–5(6) barred an inmate's claim. The court explained that inmate Ratcliff's claim was of a fundamentally different character than Blanck's: "Far from being related to prison discipline or misconduct, Ratliff was a juvenile who sought declaratory and injunctive relief contending that her incarceration with adult offenders violated the Indiana Constitution." *Id.* at 511. Accordingly, the court concluded that the holding in *Ratliff* did not extend to prison discipline or misconduct cases. *Id.* Final-

---

4. Smith waived some of his claims "by his own choice" and presents for our review only those he argued to the trial court. Appellant's Br. at 28.

ly, the court declared that the Open Courts Clause of Article 1, Section 12 does not confer subject matter jurisdiction over claims challenging prison disciplinary decisions. *Id.*

In *Israel v. Indiana Department of Correction*, 868 N.E.2d 1123 (Ind.2007), inmate Israel was ordered to serve three years in segregation and pay restitution of $8,363.85 after being found guilty in a prison disciplinary proceeding of stabbing an officer. The DOC withdrew $2,800.17 from Israel's trust account for restitution purposes. Israel filed an action against the DOC in small claims court alleging that the DOC's withdrawal from his trust account violated the terms of a written agreement he had with a prison counselor. Citing *Blanck* and Indiana Code Section 4–21.5–2–5(6), a majority of the supreme court held that restitution was a prison disciplinary sanction that was not subject to judicial review and that any arrangement between the DOC and Israel with respect as to how restitution would be made was also an agency action not subject to judicial review. *Israel*, 868 N.E.2d at 1124. The court concluded that the case should be dismissed for lack of subject matter jurisdiction.[5] Justice Boehm wrote a dissent in which Justice Dickson concurred.

Based upon *Israel*, it would appear that neither the trial court nor this Court has subject matter jurisdiction and that Smith's appeal should be dismissed. However, the concerns expressed in Justice Boehm's dissent cause us to question whether the majority in *Israel* intended the holding in that case to extend to the types of claims presented here. In his dissent, Justice Boehm observed that Israel had brought a common law breach of contract claim, a claim clearly within the

jurisdiction of Indiana state courts. *Id.* at 1126 (Boehm, J. dissenting). Justice Boehm explained that to deny judicial review of such a claim is a violation of the Open Courts Clause of the Indiana Constitution, the purpose of which is to prevent the legislature from arbitrarily or unreasonably denying access to the courts to assert an existing statutory or common law cause of action. *Id.* The right of access to courts, he noted, is a fundamental right protected under the Equal Protection Clause of the federal constitution, such that any limitation of that right must be "narrowly tailored to effectuate a compelling state interest." *Id.* In Justice Boehm's view, "[e]ven if the State's interest in avoiding mass inmate litigation over DOC disciplinary actions is compelling, the majority's reading of the statute insulates even illegal discipline from judicial review and denies access to the courts to assert conventional claims such as Israel's breach of contract." *Id.* In sum, Justice Boehm believed that the majority's holding extended *Blanck* by interpreting Indiana Code Section 4–21.5–2–5(6) "to remove from judicial review any claim that relates to discipline, however tenuously[,]" and that such an interpretation of the statute violates both the state and federal Constitutions. *Id.*

■ Justice Boehm's thoughtful dissent highlights the limits of Section 4–21.5–2–5(6)'s reach. While we respect his concerns, we do not believe that the majority in *Israel* intended that Section 4–21.5–2–5(6) be read so broadly as to violate the state and federal constitutions. Here, Smith's claims do not arise from a DOC decision following a "disciplinary proceeding," but rather from the pain inflicted by prison officers as they acted to enforce an

---

5. Justice Rucker concurred, stating that he thought *Blanck* was wrongly decided but that

*Blanck,* and the authority on which it rests, is now established law.

order. Smith's claims are fundamentally different from the claims in *Blanck* and *Israel.* If Section 4–21.5–2–5(6) were interpreted to prevent inmates from challenging any of the treatment they received in prison, prison officers would be free to beat or torture inmates any time an inmate refused to obey an order, or for any reason at all. As our supreme court stated. over three-quarters of a century ago, "The law protects persons charged with crime from ill or unjust treatment at all times." *Bonahoon v. State,* 203 Ind. 51, 56, 178 N.E. 570, 571 (1931).

■ With specific regard to Smith's federal Eighth Amendment claim, we note that "[b]y reason of the Supremacy Clause and the principles of federalism, to the extent the Federal Constitution prohibits conduct by state officers, state laws are ineffective to shield the officers from federal remedies." *Cantrell v. Morris,* 849 N.E.2d 488, 506 (Ind.2006). Our supreme court has recognized that the Indiana Tort Claims Act does not apply to claims based on 42 U.S.C. § 1983, which confers a private action for damages for federal constitutional violations. *Id.* Likewise, Indiana Code Section 4–21.5–2–5(6) would not apply to such federal claims. Consequently, we do not believe that the majority in *Israel* intended that its holding encompass Smith's claims, and we will review them on the merits.

■ In determining whether Smith could not in any way succeed under the operative facts and allegations in his complaint, we first examine his claims that DOC's actions violated his rights under Article 1, Sections 11, 15, 16, 23, and 31 of the Indiana Constitution. Questions arising under the Indiana Constitution are to be resolved by "examining the language of the text in the context of the history surrounding its drafting and ratification, the purpose and structure of our constitution,

and case law interpreting the specific provisions." *Ind. Gaming Comm'n v. Moseley,* 643 N.E.2d 296, 298 (Ind.1994).

■ Article 1, Section 11 guarantees Indiana citizens the right to be secure against unreasonable search and seizure. Its purpose is "to protect from unreasonable police activity those areas of life that Hoosiers regard as private." *Davis v. State,* 858 N.E.2d 168, 172 (Ind.Ct.App. 2006). Smith asserts that the officers used unreasonable force when they sprayed him with mace pellets. However, the facts here do not present a search and seizure cognizable under Section 11, and Smith has not cited any authority that suggests otherwise.

■ Article 1, Section 15 states: "No person arrested, or confined in jail, shall be treated with unnecessary rigor."

Cases recognizing violations of Article 1, Section 15 involve situations where a prisoner was tortured, had a tooth knocked out, was repeatedly beaten, kicked, and struck with a blackjack and beaten with a rubber hose while he was stretched across a table, *Kokenes v. State,* 213 Ind. 476, 13 N.E.2d 524 (1938), where a prisoner was beaten with police officer's fists in both eyes, cut on the top of his head, and beaten with a rubber hose on the head and ears, *Bonahoon v. State,* 203 Ind. 51, 178 N.E. 570 (1931), and where a prisoner was severely injured after being shot by police during a protest, *Roberts v. State,* 159 Ind.App. 456, 307 N.E.2d 501 (1974). *Ratliff v. Cohn,* 693 N.E.2d 530, 541 (Ind. 1998). Here, the actions of the prison officers do not rise to the level of physical abuse that were found to be violations of Section 15 in the cases above.

■ Article 1, Section 16 of the Indiana Constitution states, in part, that "[c]ruel and unusual punishments shall not

be inflicted" and that "[a]ll penalties shall be proportioned to the nature of the offense." "The constitutional prohibition against cruel and unusual punishments proscribes atrocious or obsolete punishments and is aimed at the kind and form of the punishment, rather than the duration or amount." *Dunlop v. State,* 724 N.E.2d 592, 597 (Ind.2000) (citing *Ratliff,* 693 N.E.2d at 542). Our supreme court has consistently stated that cruel and unusual punishment is that which " 'constitutes *only* purposeless and needless imposition of pain and suffering. . . .' " *Ellis v. State,* 736 N.E.2d 731, 735 (Ind.2000) (quoting *Douglas v. State,* 481 N.E.2d 107, 112 (Ind. 1985)) (emphasis in *Ellis* ). Here, the disciplinary and security measures of which Smith complains were taken as a direct result of his repeated refusal to obey orders. The actions of the prison officials were therefore not purposeless or needless.

■■■ Article 1, Section 23 states, "[t]he General Assembly shall not grant to any citizen, or class of citizens, privileges or immunities, which upon the same terms, shall not equally belong to all citizens." The purpose of the equal privileges and immunities clause is to prevent the distribution of extraordinary benefits or burdens to any group. *State v. Price,* 724 N.E.2d 670, 675 (Ind.Ct.App.2000). Smith has not alleged that a particular group received a benefit or burden that was not equally applied to others. Therefore, he has failed to state an Article 1, Section 23 claim.

■■■ Article 1, Section 31 states,

*No law* shall restrain any of the inhabitants of the State from assembling together in a peaceable manner, to con-

sult for their common good; nor from instructing their representatives; nor from applying to the General Assembly for redress of grievances.

(Emphasis added.) Smith argues that the prison officers' conduct was in retaliation of grievances he had previously filed and to dissuade him from making further applications to the General Assembly. These allegations do not constitute a claim under Section 31.

■■■ Turning now to Smith's request for compensatory and punitive damages, we note that no Indiana court has explicitly recognized a private right of action for monetary damages under the Indiana Constitution. With respect to Article 1 Section 12 of the Indiana Constitution, the Indiana Supreme Court has "never held that the Open Courts Clause provides a substantive 'right' of access to the courts or to bring a particular cause of action to remedy an asserted wrong." *Blanck v. Ind. Dep't of Corr.,* 829 N.E.2d 505, 511 (Ind.2005). With one exception, the federal district courts that have addressed the issue have found it unlikely that Indiana Courts would recognize an implied right of action for damages under the Indiana Constitution. *See, e.g., Fidler v. City of Indpls.,* 428 F.Supp.2d 857, 865 (S.D.Ind. 2006) (collecting cases).[6] In making this determination, the district courts reasoned that Indiana's courts have been hesitant to recognize implied rights of action under Indiana statutory law, and it is unlikely that the framers of the Indiana Constitution intended such an action because they would have understood sovereign immunity to bar such an action. *Baker v. Washington Board of Works,* 2000 WL 33252101 at *8 (S.D.Ind. June 8, 2000), *recons. granted in part on other grounds,* 2000

---

**6.** One federal district court has assumed, for purposes of argument, that Indiana courts would recognize such a right. *See Discovery*

*House, Inc. v. Consol. City of Indpls.,* 43 F.Supp.2d 997, 1004 (N.D.Ind.1999).

WL 964934.[7] Since there is no express or implied right of action for monetary damages under the Indiana Constitution, Smith cannot succeed on such a claim.

With respect to Smith's negligence claims, we observe that prison officers are shielded from liability in their official capacity under the Indiana Tort Claims Act ("ITCA"). Ind.Code § 34–13–3–1 *et seq.* Indiana Code Section 34–13–3–5(c) provides that, in order to bring a suit against an employee personally, the plaintiff must "allege that an act or omission of the employee that causes a loss is (1) criminal; (2) clearly outside the scope of the employee's employment; (3) malicious; (4) willful and wanton; or (5) calculated to benefit the employee personally." In addition, the plaintiff's complaint "must contain a reasonable factual basis supporting the allegations." *Id.* The purpose of the ITCA is to "ensure that public employees can exercise their independent judgment necessary to carry out their duties without threat of harassment by litigation or threats of litigation over decisions made within the scope of their employment." *Celebration Fireworks, Inc. v. Smith,* 727 N.E.2d 450, 452 (Ind.2000). When the employee's conduct is "of the same general nature as that authorized, or incidental to the conduct authorized," it is "within the scope of employment." *Id.*

Smith asserts that the officers were acting outside the scope of their employment because the cell extraction was not properly authorized. The cell extraction was undertaken because Smith would not obey the orders of the officers at a time when other prisoners were purposely flooding their cells. Enforcing discipline and maintaining prison security is clearly within the prison officers' scope of employment.[8] As such, Smith cannot prevail on his claim against the prison officers individually.

Smith contends that "pro se litigants should be afforded some latitude when determining whether a suit has been properly filed." Appellant's Br. at 16. However, it is well established that pro se litigants are held to the same standard as are licensed lawyers. *Goossens v. Goossens,* 829 N.E.2d 36, 43 (Ind.Ct.App.2005). We conclude that under the operative facts and allegations made in his complaint, he cannot in any way succeed on these claims. Therefore, the trial court did not err in granting the DOC's motion for judgment on the pleadings.

## II. Appointment of Counsel

Smith argues that the trial court abused its discretion in denying his request for appointment of counsel. Indiana Code Section 34–10–1–2(d)(2) provides, "The court shall deny an application made under section 1 of this chapter if the court determines any of the following:.... The applicant is *unlikely to prevail* on the applicant's claim or defense." (Emphasis added.)

Having already found, under the operative facts and allegations made in his com-

---

7. While *Baker* is an unpublished decision, neither of Indiana's federal district courts has a rule limiting the use of unpublished decisions.

8. On appeal, Smith argues that the lieutenant who supposedly authorized the cell extraction denied doing so. Appellant's Br. at 18–19. Neither Smith's original nor his amended complaint contain a factual basis to support an allegation that the cell extraction was unauthorized. In fact, both complaints allege that Major Payne "called for a cell extraction team." Appellant's App. at 423; Appellees' App. at 6. Major Payne is in charge of three correctional captains, six correctional lieutenants, eleven correctional sergeants, and eighty-one correctional officers. Appellant's App. at 201. A reasonable assumption is that Major Payne had the authority to order the cell extraction.

plaint, that Smith cannot in any way succeed on his claims of state constitutional violations and negligence, we now conclude that he is unlikely to prevail on his claims. Accordingly, the trial court did not abuse its discretion in denying his request for appointment of counsel.

### III. Motion to Amend the Complaint

Smith also asserts that the denial of his motion to amend his complaint was an abuse of discretion. Indiana Trial Rule 15 governs the amendment of pleadings and provides, in pertinent part: "a party may amend his pleading only by leave of court or by written consent of the adverse party; and leave shall be given when justice so requires." Amendments to the pleadings are to be liberally allowed. *Hendrickson v. Alcoa Fuels, Inc.*, 735 N.E.2d 804, 817 (Ind.Ct.App.2000). The trial court retains broad discretion in granting or denying amendments to pleadings, and we will reverse only upon a showing of abuse of that discretion. *Kuehl v. Hoyle*, 746 N.E.2d 104, 107 (Ind.Ct.App. 2001). An abuse of discretion has occurred if the trial court's decision is clearly against the logic and effect of the facts and circumstances before the court, or if the court has misinterpreted the law. *McCullough v. Archbold Ladder Co.*, 605 N.E.2d 175, 180 (Ind.1993). In determining whether an abuse of discretion has occurred, we look at such factors as undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiency by amendment previously allowed, undue prejudice to the opposing party, and *futility of the amendment*. *Nyby v. Waste Mgmt., Inc.*, 725 N.E.2d 905, 915 (Ind.Ct.App.2000), *trans. denied*.

Smith's proposed amended complaint alleged violations of his rights under Article 1, Sections 15, 16, and 23 of the Indiana Constitution and the ITCA, and added a claim that his rights under the Eighth Amendment to the United State Constitution were violated. We have already determined that Smith would not have prevailed on his claims under the Indiana Constitution and the ITCA. We need only consider his federal constitutional claim to resolve this issue.

The Eighth Amendment, which applies to the states through the Fourteenth Amendment, prohibits the infliction of cruel and unusual punishment and manifests an intention to limit the power of those entrusted with the government's criminal-law function. *Whitley v. Albers*, 475 U.S. 312, 318, 106 S.Ct. 1078, 89 L.Ed.2d 251 (1986). However, not every governmental action affecting the interests or well-being of a prisoner is subject to Eighth Amendment scrutiny. *Id.* "After incarceration, only the 'unnecessary and wanton infliction of pain' ... constitutes cruel and unusual punishment forbidden by the Eighth Amendment." *Ingraham v. Wright*, 430 U.S. 651, 670, 97 S.Ct. 1401, 51 L.Ed.2d 711 (1977) (quoting *Estelle v. Gamble*, 429 U.S. 97, 103, 97 S.Ct. 285, 50 L.Ed.2d 251 (1976)) (citations omitted).

Prison administrators are charged with the responsibility of ensuring the safety of the prison staff, administrative personnel, and visitors, as well as the inmates themselves. *Hudson v. Palmer*, 468 U.S. 517, 526–27, 104 S.Ct. 3194, 82 L.Ed.2d 393 (1984). "Prison administrators ... should be accorded wide-ranging deference in the adoption and execution of policies and practices that in their judgment are needed to preserve internal order and discipline and to maintain institutional security." *Bell v. Wolfish*, 441 U.S. 520, 547, 99 S.Ct. 1861, 60 L.Ed.2d 447 (1979). "The infliction of pain in the course of a prison security measure, therefore, does not amount to cruel and unusual punishment simply because it may appear

in retrospect that the degree of force authorized or applied for security purposes was unreasonable, and hence unnecessary in the strict sense." *Whitley*, 475 U.S. at 319, 106 S.Ct. 1078. The test as to whether the measure taken inflicted unnecessary and wanton pain and suffering is whether the force was applied in a good faith effort to maintain or restore discipline or maliciously and sadistically for the very purpose of causing harm. *Id.* at 320–21, 106 S.Ct. 1078. Pursuant to 42 U.S.C. Section 1983, persons deprived of federal constitutional rights may bring a private action for damages against individual officers and units of local government. *Cantrell v. Morris*, 849 N.E.2d 488, 506 n. 26 (Ind. 2006).

Here, the prison officers were facing a situation in which inmates had purposely clogged their toilets, causing flooding. Smith kicked his cell door and then refused to remove his tennis shoes or "cuff up." To extract him from his cell, Smith was sprayed with mace and mace pellets. Afterward, he was placed in restraints for two hours. Given the volatile situation in the prison at that time, the officers were acting to maintain order and discipline and were not acting maliciously and sadistically for the very purpose of causing harm. We conclude that the conduct of the DOC does not constitute a violation of the prohibition against cruel and unusual punishment, and therefore an amendment adding an Eighth Amendment claim to Smith's complaint would have been futile. Accordingly, the trial court did not abuse its discretion in denying Smith's motion to amend his complaint.

### IV. Motion to Compel Discovery

Smith contends that the trial court erred in denying his request to produce the videotape of the cell extraction. He argues that the tape would have clearly proven his claims and allegations. The DOC argues that any information regarding cell extractions is classified as confidential because "it may contain information such as any possible blind spots the cameras may have or the shift changes, and the number of correctional officers assigned to a specific location." Appellees' Br. at 22. In support of its argument, the DOC cites *Piggie v. Cotton*, 344 F.3d 674, 678 (7th Cir.2003), for the proposition that an inmate is entitled to disclosure of material, exculpatory evidence in prison disciplinary hearings unless such disclosure would unduly threaten institutional concerns.

While the case at bar does not involve a disciplinary hearing, we agree that the DOC should not be compelled to release information that would *unduly* threaten institutional concerns. However, in *Piggie*, the cell extraction was videotaped by an officer carrying a hand-held camera. The Seventh Circuit therefore found that the logistics of the prison surveillance system were not at issue and stated, "We have never approved of *a blanket policy* of keeping confidential security camera videotapes for safety reasons." *Id.* at 679 (emphasis added). Finding that the State had not advanced any security reason for withholding the tape, and recognizing that the record did not establish with any degree of certainty that the tape lacked exculpatory value or was otherwise irrelevant, the Seventh Circuit remanded to the trial court to conduct an *in camera* review. The trial court was instructed to determine whether the State had a valid security interest in withholding the tape and, if not, whether the tape contained exculpatory information.

Here, we have analyzed Smith's claims based on the premise that all the allegations set forth in his complaint and all favorable intendments arising therefrom are true, and we have found that he would not prevail. Therefore, even if the video-

tape confirmed all his allegations, it would not change the outcome. Accordingly, any error in denying Smith's motion to compel discovery was harmless. We observe, however, that in these situations, the trial court would be in a better position to rule on a motion to compel discovery, and we would be in a better position to review its decision, if the DOC advanced specific security concerns related to the particular tape at issue. Depending upon the circumstances, it may be necessary for the trial court to conduct an *in camera* review. *See Piggie,* 344 F.3d at 679. Based upon the foregoing, we affirm the judgment of the trial court.

Affirmed.

BAKER, C. J., and FRIEDLANDER, J., concur.